(244 P.3d 287)
No. 103,089

STATE OF KANSAS, *Appellee*, v. GERARDO LALO URISTA JR., *Appellant*.

Opinion filed December 17, 2010.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, for appellant.

*Chadwick J. Taylor*, district attorney, *Natalie Chalmers*, assistant district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: Gerardo Urista Jr. agreed to plead no contest for 15 separate offenses, including aggravated robbery with the use of a handgun and discharge of a firearm at an occupied building, in exchange for the State's recommendation that these sentences would be run concurrently. This agreement would have substantially limited the time Urista spent in prison. Though the prosecutor recommended concurrent sentences at the sentencing hearing, the prosecutor also made several statements that put Urista in a negative light. After both sides had made their presentations, the district court gave Urista consecutive sentences, resulting in a controlling sentence of 204 months in prison. Had Urista received

concurrent sentences, his sentence would have been 102 months, which is the length of the standard guideline sentence on the most serious charge, aggravated robbery.

Urista has appealed primarily on the basis that the State violated the plea agreement by effectively arguing against concurrent sentences. When the State breaches a plea agreement, the defendant is denied due process. *State v. Foster*, 39 Kan. App. 2d 380, Syl. ¶ 1, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008). So we must decide whether the State breached its agreement in Urista's case. Whether the State breached a plea agreement presents a question of law on which we must decide the matter independently, without any required deference to the district court. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

Urista relies primarily on our decision in *Foster*. In that case, the State agreed to recommend probation, but the defendant could only receive probation if the sentencing judge specifically found that probation would best serve the interest of community safety by promoting the defendant's reformation. At sentencing, the prosecutor recommended probation but otherwise provided only negative information about the defendant. Notably, the prosecutor provided no information that could support the findings required for probation but provided lots of information that directly negated the findings the judge would have to make in order to grant probation. In that situation, we found that the prosecutor had breached the plea agreement: "Foster's prosecutor said that she recommended probation, but the words she used do not meet the minimum requirements for a recommendation . . . . The prosecutor here did not state anything that would cause an objective person to conclude that probation was . . . even acceptable." 39 Kan. App. 2d at 386-87.

Our Supreme Court also recently addressed in *Woodward* how to determine whether the State has breached a plea agreement. The court emphasized, as we had in *Foster*, that the State can breach a plea agreement when it effectively undermines a recommendation it had agreed to make:

"The State can breach a plea agreement by effectively arguing against the negotiated sentencing recommendation. [Citation omitted.] However, if the State ac-

tually makes the sentence recommendation that it promised, the prosecutor's further comments in support of the recommended sentence do not breach the plea agreement so long as the comments do not effectively undermine the recommendation. [Citations omitted.]" *Woodward*, 288 Kan. at 300.

With these rules in mind, let's look at the prosecutor's comments at Urista's sentencing hearing. When the district court asked for the State's sentencing recommendations, the prosecutor opened and closed her remarks by asking the court to follow the plea agreement and impose concurrent sentences, resulting in a 102-month prison sentence. In between those requests, the prosecutor discussed at length Urista's dangerous history as a member of a gang, his history of violating the terms of his prior juvenile adjudications, and the factual details of his crimes. The comments included several about Urista's dangerousness and lack of concern for his victims:

- "I know a lot about Mr. Urista. He's a very dangerous young man. Unless he changes his ways, one of two things is going to happen to him. One, he's going to kill somebody, and he's lucky he didn't do it this time, or somebody's going to kill him."

- "This young man has absolutely no compassion or any kind of sympathy or empathy. He has no feelings about his victims. He just continually and continually does these very violent acts."

- "Your Honor, he may be young in chronological age and maybe even look young physically to you, but I can assure you that this is a young man who is extremely street savvy, and has absolutely no qualms about shooting somebody. He is a menace to this community, he is a danger to this community."

- "He comes from a very good family. His parents . . . have tried their best to do what's right for this young man, and he has essentially spit in their face. He has had every opportunity, every opportunity, to do right and he has chosen to do wrong."

On appeal, Urista emphasizes one of the comments we made in *Foster*: "[W]hen the prosecutor provides negative information that may lead the court to reject the recommended sentence agreed

upon in a plea bargain, the prosecutor must also provide some rationale in support of the recommended sentence." 39 Kan. App. 2d 380, Syl. ¶ 3. But there is a crucial difference between Urista's case and *Foster*. In *Foster*, the court could give the recommended sentence *only* if it could make the required finding that probation would best serve the interest of community safety by promoting the defendant's reformation. Our statement in *Foster* must be read with that context in mind. In *Foster*, the prosecutor had a duty to provide at least some rationale under which the judge might yet enter the sentence the State had agreed to recommend because specific findings were required to follow the plea agreement and the prosecutor provided substantial and negative information that could lead a reasonable judge to reject the recommended sentence of probation.

Urista's case is different because the district court is not required to give any reason to support its decision to enter either concurrent or consecutive sentences; that decision is simply up to the discretion of the district court. See K.S.A. 21-4720(b); *State v. Flores*, 268 Kan. 657, 660, 999 P.2d 919 (2000). In this context, the prosecutor must not so undermine the recommendation that only lip service has been paid to it. *Woodward*, 288 Kan. at 300; *Foster*, 39 Kan. App. 2d at 387. Yet the prosecutor is not required to give a specific rationale in support of the recommendation. After all, the district court is not required even to explain why it made the sentences concurrent or consecutive.

We do not believe that the prosecutor so undermined the recommendation of concurrent sentences that the plea agreement was breached. The 102-month sentence the prosecutor recommended is surely a strong sentence, and the information the prosecutor provided would support such a sentence. As we said in *Foster*, a prosecutor is not "precluded from presenting any information relevant to the sentencing decisions the judge was required to make." 39 Kan. App. 2d at 389.

In addition to the negative comments we've already noted, the prosecutor in Urista's case also pointed out Urista's young age and the support of his family, which could provide some support for a decision to impose concurrent sentences. The State also notes that

some of the comments the prosecutor made were requested by victims of Urista's crimes; Kansas law guarantees that victims be heard at sentencing proceedings. See Kan. Const. art. 15, § 15(a) (2009 Supp.). The vast majority of the comments reflected factual information about Urista's crimes, matters the sentencing judge (who had also taken the pleas) already knew about.

We conclude that the prosecutor's remarks in Urista's case did not so undermine her recommendation for concurrent sentences as to negate that recommendation altogether. The comments made in this case are in line with those found in other cases in which no breach of a plea agreement was found. *E.g., State v. Johnson*, 258 Kan. 100, 106-07, 899 P.2d 484 (1995) (State's agreement not to take position on whether sentences should be concurrent or consecutive was not breached when prosecutor described facts of crime in detail after victims asked for consecutive sentences; State "had the right to . . . state the extent of defendant's participation in the crimes."); *State v. Hill*, 247 Kan. 377, 379, 799 P.2d 997 (1990) (State's agreement to recommend two consecutive life sentences was not breached when prosecutor only referred to written document containing that recommendation and orally noted that the victims' position was that " 'no amount of time in this case is going to be enough.' ").

Urista raises two additional arguments on appeal, both based on the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). First, he argues that the district court's order that he register under the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, after he is released from prison violates *Apprendi* because the court, not a jury, found that Urista used a deadly weapon in the commission of the person felonies to which he pled no contest. See K.S.A. 2009 Supp. 22-4902(a)(7). This argument was rejected by our court in *State v. Chambers*, 36 Kan. App. 2d 228, 235-39, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006). In short, we held in *Chambers* that although these registration requirements do have some inherently punitive aspects, an order to register does not increase the imposed sentence beyond the maximum provided for that offense. Thus, the factual findings required to order registration do not

implicate a defendant's jury-trial rights under *Apprendi*. 36 Kan. App. 2d at 239. We reject Urista's argument that *Chambers* was wrongly decided.

Urista also argues that the use of his criminal history to calculate the length of his sentence—as required under the Kansas sentencing guidelines—violated his right to a jury trial because a jury did not decide the fact of his past convictions. This argument has been consistently rejected by our Supreme Court. See *State v. Bonner*, 290 Kan. 290, 305, 227 P.3d 1 (2010); *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002).

The judgment of the district court is therefore affirmed.