No. 104,620

STATE OF KANSAS, *Appellee*, v. WILLIAM ANTRIM, *Appellant.*

(279 P.3d 110)

Opinion filed June 29, 2012.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: After pleading no contest to three counts of aggravated indecent liberties with a child, William M. Antrim appeals his sentence, arguing the State breached the plea agreement by arguing against the recommended sentence in the agreement. Further, he contends the district court erred in determining the minimum prison term he must serve before becoming eligible for parole and in including lifetime electronic monitoring in the journal entry of judgment. Because the district court had no authority to impose lifetime electronic monitoring, we remand this case to the district court for entry of a nunc pro tunc order deleting the reference to electronic monitoring in the journal entry, but we affirm the remainder of his sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement with the State, Antrim agreed to plead no contest to three counts of aggravated indecent liberties with a child in return for the State's agreement to dismiss three

counts of rape and recommend a sentence of life with a mandatory minimum term of imprisonment of 25 years, on each count with the sentences to run concurrently. The agreement specifically recognized that although Antrim was "free to seek any alternative sentence allowed by law," the State would oppose any such effort.

At sentencing, Antrim moved for a departure from the mandatory minimum sentence of Jessica's Law, K.S.A. 21-4643(a)(1)(C), and introduced the testimony of Dr. Gerard Steffan, a clinical psychologist, in support of the motion. Dr. Steffan testified that Antrim's scores on various psychological tests placed him in the lowest category of risk for reoffending with another sexual offense. According to Dr. Steffan, research shows that child molesters who molest children within the family recidivate at lower rates than rapists and child molesters who molest children outside of the family. On cross-examination, Steffan admitted he was aware that intrafamily victims report less frequently than victims of incidents with strangers.

Following Steffan's testimony, the court proceeded directly to sentencing. The court expressly requested that the State incorporate its argument against the motion for departure into its recommendation for disposition. The defendant did not object to this procedure, and the prosecutor stated:

"Judge, I'm asking the Court to follow the plea agreement. This is a situation where the defendant has had some concessions. We dismissed some counts for this plea, three counts of aggravated indecent liberties. I'm asking the Court to run the counts concurrently. In the end it's one life sentence with a minimum of 25 years incarceration.

. . . .

"He has now perpetuated through his own daughter exactly what Dr. Steffan has diagnosed the defendant with, which is she's going to have difficulty in her future. This has changed her life by his act. The defendant can say all he wants. He didn't force her. He asked and she gave in. She was 7. A 7-year-old does not give in to sexual requests.

"I'm asking the Court to follow this plea agreement, Judge."

Ultimately, the court declined to follow the plea agreement's recommendation of concurrent sentences, finding "this is one of the most deplorable and despicable things that could be perpetrated on a young girl." Instead, the court sentenced Antrim to

consecutive life sentences with a mandatory minimum term of imprisonment of 25 years on each count. Further, the court denied Antrim's motion to depart.

## ANALYSIS

### *Breach of the Plea Agreement*

In this direct appeal, Antrim first argues the State violated his due process rights by failing "to abide by the terms of the plea agreement and effectively arguing against concurrent sentencing." Antrim focuses on the prosecutor's cross-examination of Steffan and the prosecutor's subsequent comment that Antrim "perpetuated through his own daughter exactly what Dr. Steffan has diagnosed the defendant with, which is she's going to have difficulty in her future."

Whether the State breached the plea agreement presents a question of law over which we exercise unlimited review. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

"The State can breach a plea agreement by effectively arguing against the negotiated sentencing recommendation. However, if the State actually makes the sentence recommendation that it promised, the prosecutor's further comments in support of the recommended sentence do not breach the plea agreement so long as the comments do not effectively undermine the recommendation." 288 Kan. 297, Syl. ¶ 3.

In support of his claim that the State breached the plea agreement, Antrim relies almost exclusively on *State v. Foster*, 39 Kan. App. 2d 380, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008). There, the court considered whether the prosecutor breached the provision of the plea agreement requiring him to recommend probation when the prosecutor specifically recommended probation but failed to argue that probation would serve community safety interests by promoting offender reformation—a finding necessary for the court to grant probation. 39 Kan. App. 2d at 384. The court found that although the prosecutor made the minimum recommendation required by the plea agreement, she paid lip service to that recommendation by providing only negative information about Foster at sentencing. 39 Kan. App. 2d at 387.

But Antrim ignores decisive distinctions between this case and *Foster*. In *Foster*, the court could not grant the sentence recommended in the plea agreement without making an additional factual finding. In contrast, the court here could have sentenced Antrim to consecutive sentences based solely upon the parties' recommendations. See K.S.A. 21-4720(b). Further, unlike in *Foster*, the parties in this case specifically agreed that while the defendant was "free to seek any alternative sentence allowed by law," the State would oppose that effort.

And that is precisely what the State did after Antrim moved to depart from the mandatory minimum sentence required by Jessica's Law and supported his request with expert testimony. Consistent with the plea agreement, the prosecutor cross-examined the expert and argued against the expert's conclusions. Moreover, the court specifically requested that the prosecutor combine his argument against the motion for departure with the State's recommended disposition, and the defendant did not object to this procedure.

In this regard, we find *Woodward* more analogous to the facts of this case. There, the defendant argued on appeal that the court's imposition of a greater-than-bargained-for sentence should be attributed to the manner in which the prosecutor presented the State's recommendation. We disagreed, noting that the prosecutor's comments "appear to have been directly tailored to address the defense's attempt to cast Woodward in a favorable light." 288 Kan. at 302. The court concluded that because the bargained-for sentence was not the minimum sentence the court could impose, "the State was free to argue why the recommended sentence was also the most appropriate sentence to impose under the circumstances. The plea agreement did not require the prosecutor to ignore the defense's attempts to minimize Woodward's culpability." 288 Kan. at 302.

Similarly, the plea agreement at issue here required the State to recommend concurrent sentences, and the prosecutor explicitly twice made that recommendation. But the agreement also indicated that the State would oppose any attempt by Antrim to seek an alternative sentence, and the prosecutor acted in accordance

with that agreement by opposing Antrim's motion for a departure from the mandatory minimum sentence of Jessica's Law. Under these circumstances, we conclude the State did not breach the plea agreement.

*Parole Eligibility*

Next, relying on the rule of lenity, Antrim contends the district court erred in determining the minimum prison term he must serve before becoming eligible for parole. Specifically, Antrim argues he should be eligible for parole after 20 years of imprisonment as provided in K.S.A. 22-3717(b)(2) rather than after serving the mandatory minimum term imposed under K.S.A. 21-4643(a) as provided in K.S.A. 22-3717(b)(5). After both parties filed their appeal briefs in this case, we rejected this argument in *State v. Hyche*, 293 Kan. 602, 604, 265 P.3d 1172 (2011) (quoting *State v. Cash*, 293 Kan. 326, Syl. ¶ 1, 263 P.3d 786 [2011]) (" 'Notwithstanding the overlap in the parole eligibility rules contained in K.S.A. 2008 Supp. 22-3717(b)(2) and (b)(5), an inmate sentenced to an off-grid, indeterminate hard 25 life sentence pursuant to K.S.A. 21-4643 shall not be eligible for parole until that inmate has served the mandatory 25 years in prison.' "). Therefore, we conclude the district court did not err in determining Antrim would be eligible for parole after serving the mandatory minimum term imposed under K.S.A. 21-4643(a), in this case 75 years.

*Lifetime Electronic Monitoring*

Finally, Antrim contests the inclusion of lifetime electronic monitoring in the journal entry of judgment as being outside the jurisdiction of the district court. The State concedes that we have held that the imposition of parole conditions, including lifetime electronic monitoring, is within the authority of the parole board but outside the jurisdiction of the district court. See K.S.A. 22-3717(u); *Hyche*, 293 Kan. 602, Syl. ¶ 2; *State v. Duong*, 292 Kan. 824, 840, 257 P.3d 309 (2011); *State v. Jolly*, 291 Kan. 842, 848, 249 P.3d 421 (2011). However, as the State points out, the district court did not include the lifetime electronic monitoring condition when it imposed sentence from the bench. Accordingly, we need not vacate any portion of the sentence imposed by the court. Instead, we

remand this case to the district court for entry of a nunc pro tunc order deleting the reference in the journal entry to lifetime electronic monitoring.

Affirmed in part and remanded with directions.