No. 103,089

STATE OF KANSAS, *Appellee*, v. GERARDO LALO URISTA, JR.,
*Appellant.*
(293 P.3d 738)

Opinion filed February 8, 2013.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Natalie Chalmers*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: After entering into a plea agreement with the State, Gerardo Lalo Urista, Jr., entered no contest pleas to numerous crimes in exchange for the State's promise to recommend at sentencing that the district court impose a controlling term of 102 months' imprisonment. At sentencing, the district court declined to impose the recommended sentence and instead imposed a con-

trolling term of 204 months' imprisonment. Furthermore, the district court ordered Urista to register as an offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, once he is released from prison.

Before the Court of Appeals, Urista raised three issues. First, he argued that the prosecutor violated the plea agreement by making negative comments at sentencing which undermined the parties' recommendation that the district court impose a controlling 102-month prison sentence. Second, Urista argued that the requirement that he register as an offender after being released from prison increased his sentence beyond the prescribed statutory maximum. Accordingly, he argued that pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the fact that he used a deadly weapon during the commission of his aggravated robbery and aggravated assault convictions—the basis for requiring him to register as an offender—had to be proved to a jury beyond a reasonable doubt. Third, Urista argued that the district court violated *Apprendi* when it used his prior convictions to determine his sentence under the sentencing guidelines without requiring the State to prove the existence of those convictions to a jury beyond a reasonable doubt.

The Court of Appeals rejected each of Urista's arguments and affirmed his sentences. *State v. Urista*, 45 Kan. App. 2d 93, 244 P.3d 287 (2010). We granted Urista's petition for review on all three issues and now conclude that the prosecutor's comments at sentencing effectively undermined her sentencing recommendation to the district court, thereby violating the State's plea agreement with Urista. Because we also find that this breach of the plea agreement was not harmless, we vacate Urista's sentence and remand for a new sentencing hearing. Because this outcome renders as moot the two other issues (related to sentencing) presently before us, we decline to reach the merits of those issues.

## FACTS

Pursuant to a plea agreement, Urista pleaded no contest to three counts of aggravated robbery, three counts of aggravated assault, one count of burglary, one count of conspiracy to commit burglary,

two counts of criminal damage to property, one count of criminal possession of a firearm, one count of theft, one count of criminal discharge of a firearm at an occupied dwelling or vehicle, one count of criminal possession of a firearm by a juvenile (1st offense), and one count of obstructing legal process or official duty. In exchange, the State agreed to recommend imposing the "standard" sentence for the base offense (aggravated robbery) and recommend that all the sentences run concurrently. The parties also agreed not to seek a dispositional and/or durational departure. At Urista's plea hearing, the prosecutor informed the district court of the plea agreement's terms, including the recommended sentence. The district court accepted Urista's no contest plea and found him guilty of the charges.

A presentence investigation (PSI) was conducted which determined that Urista had a criminal history score of C. Accordingly, the applicable sentencing grid box for the base offense of aggravated robbery was C-3 (a sentencing range of 96, 102, or 107 months). See K.S.A. 2008 Supp. 21-4704(a).

The same district court judge who presided over Urista's plea hearing presided over his sentencing. At sentencing, after the parties confirmed that the criminal history score noted in the PSI report was accurate, the district court asked the State for its sentencing recommendation. In response, the prosecutor stated, "Your Honor, there's a written plea agreement in this case and the State's going to ask you to follow that written plea agreement." The prosecutor then proceeded to give an extensive statement regarding Urista's prior juvenile adjudications, his affiliation with a street gang, his current convictions, and information contained within the victim impact statements submitted to the court. In addition to this information, the prosecutor also made several statements expressing a negative and fatalistic opinion of Urista. The prosecutor's statements included the following:

- "I've had the unique opportunity to prosecute [Urista] as a juvenile. I know a lot about Mr. Urista. He's a very dangerous young man. Unless he changes his ways, one of two things is going to happen to him. One, he's going to kill somebody,

and he's lucky he didn't do it this time, or somebody's going to kill him."

- "This young man has absolutely no remorse, number one. This young man has absolutely no compassion or any kind of sympathy or empathy. He has no feelings about his·victims. He just continually and continually does these very violent acts."

- "And this young man could care less. He could care less the havoc that he has wreaked on this community."

- "And, Your Honor, he may be young in chronological age and maybe even look young physically to you, but I can assure you that this is a young man who is extremely street savvy, and has absolutely no qualms about shooting somebody. He is a menace to this community, he is a danger to this community."

- "He comes from a very good family. His parents are sitting in the back of the courtroom and they have never missed a court hearing from the very first time I prosecuted this young man when he was 14 years old. They never missed one court hearing. They have tried their best to do what's right for this young man, and he has essentially spit in their face. He has had every opportunity, every opportunity, to do right and he has chosen to do wrong."

During her statement regarding Urista, the prosecutor again noted that the parties had entered into a plea agreement and asked the district court to impose a controlling sentence of 102 months' imprisonment (the standard sentence in the C-3 grid box) pursuant to their agreement. The prosecutor repeated this sentencing recommendation after making the comments at issue.

The district court asked the prosecutor if there were any victims present at the sentencing hearing who wanted to address the court. The prosecutor said no but added that the victims had asked her to address the court on their behalf. In response, the court said it would consider the submitted victim impact statements. The district court then asked for comments from defense counsel. Defense counsel had the following exchange with the district court:

"[DEFENSE COUNSEL]: Well, Your Honor, I'm not sure where to start. I wasn't quite prepared to come in today and respond to what I consider to be objectionable. And I would object to everything that came after 'We'd recommend you follow the plea agreement.' After that, [the prosecutor] gives a ten-minute speech essentially elaborating on the factual basis. I'm just afraid that comes dangerously close to violating the plea agreement. So we would just object, understanding that the Court has had a chance to read the victim statements and has had a chance to hear the factual basis.

"THE COURT: Other than comments made by, I believe a probation supervisor during the juvenile proceedings, it is my recollection or belief that the prosecutor provided essentially the same factual basis for some of these crimes at the time of the plea. I was aware of the nature of the crimes, and so other than the comments about what was said outside of my presence at a juvenile proceeding, I'm going to consider all of the facts surrounding these crimes.

"[DEFENSE COUNSEL]: Absolutely, Your Honor. And Your Honor, you've hit it on the head, Your Honor. Without going back through everything, yeah, there was just a few things that were kind of made me take a pause.

"Your Honor, we would also join in the State's request that you follow the plea agreement. 102 months is essentially eight and a half years that Mr. Urista will have to think about the crimes that he's committed. And in speaking with him over the past several months, I do get the sense that this is reality setting in for him. Eight plus years in prison for a young man of 18, 17 when he went into custody, is half of the lifetime that he's already lived, essentially."

Defense counsel made further comments in favor of imposing the recommended sentence of 102 months' imprisonment. Ultimately, the district court, without stating its reasons for doing so, rejected the sentence recommended by the parties and instead imposed consecutive sentences for Urista's three aggravated robbery convictions (a base sentence of 102 months' imprisonment followed by two 59-month prison sentences) and concurrent sentences for the remaining felony convictions, resulting in a controlling sentence of 204 months' imprisonment. See K.S.A. 21-4720(b)(4) ("The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence."). Additionally, the district court found that because Urista had used a deadly weapon during the commission of the aggravated robbery and aggravated assault convictions, he had to register as an offender pursuant to KORA after he is released from prison.

Urista timely appealed to the Court of Appeals, raising three issues: (1) the prosecutor violated the plea agreement by making statements at sentencing which undermined her sentencing recommendation; (2) based on *Apprendi*, the fact that he used a deadly weapon during the commission of the aggravated robbery and aggravated assault convictions—the basis for requiring him to register as an offender under KORA—should have been proven to a jury beyond a reasonable doubt; and (3) because his prior convictions were used to determine his sentences under the sentencing guidelines, the existence of those convictions, based on *Apprendi*, should have been proven to a jury beyond a reasonable doubt.

The Court of Appeals rejected each of Urista's arguments, concluding: (1) the prosecutor did not violate the plea agreement because her statements were not sufficient to negate her recommendation to the district court that it impose concurrent sentences; (2) based on *State v. Chambers*, 36 Kan. App. 2d 228, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006), the fact that Urista used a deadly weapon during the commission of the aggravated robbery and aggravated assault convictions did not have to be proved to a jury beyond a reasonable doubt because registration under KORA did not increase Urista's sentences beyond the prescribed statutory maximum; and (3) based on *State v. Bonner*, 290 Kan. 290, 305, 227 P.3d 1 (2010), and *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), there was no need for Urista's criminal history to be proven to a jury beyond a reasonable doubt in order for the district court to use that criminal history to determine Urista's sentence under the sentencing guidelines. See *Urista*, 45 Kan. App. 2d 93.

## VIOLATION OF THE PLEA AGREEMENT

Urista contends that the prosecutor violated the plea agreement by making the comments (quoted above) at sentencing. Urista argues that these comments undermined the prosecutor's recommendation to the district court that it impose concurrent sentences, resulting in a controlling sentence of 102 months' imprisonment. Accordingly, Urista argues that his case should be remanded for resentencing before a different district court judge. Whether the State breached the plea agreement presents a question of law over

which we exercise unlimited review. See *State v. Antrim*, 294 Kan. 632, 634, 279 P.3d 110 (2012).

*Applicable Law*

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. See *State v. Wills*, 244 Kan. 62, 67-68, 765 P.2d 1114 (1988); *State v. Foster*, 39 Kan. App. 2d 380, 390, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008); *State v. McDonald*, 29 Kan. App. 2d 6, Syl. ¶ 1, 26 P.3d 69 (2001). This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing. *Foster*, 39 Kan. App. 2d at 390.

"[A] plea agreement is generally subject to contract principles" and, accordingly, the "application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances." *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010); see also *State v. Boley*, 279 Kan. 989, 992-93, 113 P.3d 248 (2005) (noting the same). Kansas courts have recognized that contracts, with the exception of at-will employment agreements, contain implied covenants of good faith and fair dealing. *Estate of Draper v. Bank of America*, 288 Kan. 510, Syl. ¶ 13, 205 P.3d 698 (2009); see also *Foster*, 39 Kan. App. 2d at 388-89 (applying the implied covenants of good faith and fair dealing to a plea agreement). Furthermore, "[t]he law implies that contractual provisions requiring the exercise of judgment or discretion will be honestly exercised and faithfully performed." *Lessley v. Hardage*, 240 Kan. 72, Syl. ¶ 7, 727 P.2d 440 (1986). Thus, parties to a plea agreement must act fairly and in good faith in carrying out the promises they have made.

Obviously, the State can breach a plea agreement by explicitly failing to fulfill an agreed-upon promise, such as failing to make a

sentencing recommendation to the district court that it promised it would make. See *Santobello*, 404 U.S. at 257-59 (State violated plea agreement by recommending a 1-year sentence at sentencing; in the plea agreement, State agreed not to make any sentencing recommendation); *McDonald*, 29 Kan. App. 2d at 10 (State violated plea agreement by telling district court at sentencing that State did not oppose granting defendant's downward dispositional departure motion but reminded court of the factual findings it would have to make in order to grant motion; in plea agreement, State promised to recommend 24 months' probation consecutive to the defendant sentence for a parole violation). *Cf. United States v. Benchimol*, 471 U.S. 453, 455-56, 105 S. Ct. 2103, 85 L. Ed. 2d 462 (1985) (government complied with plea agreement by making sentencing recommendation it promised it would make at sentencing and nothing more; plea agreement did not require the prosecutor to express enthusiasm for the recommendation or to explain the reasons behind the recommendation at sentencing); *State v. Hill*, 247 Kan. 377, 385-86, 799 P.2d 997 (1990) (plea agreement required State to recommend controlling term of two consecutive life sentences; at sentencing, prosecutor merely informed district court that PSI report contained parties' recommended sentence; this court concluded that prosecutor's actions satisfied requirement to make sentencing recommendation because same judge presided over plea hearing and sentencing and was explicitly informed of recommended sentence at plea hearing; furthermore, judge had copy of PSI report which contained recommended sentence and judge made statements at sentencing which indicated he was aware of recommended sentence).

But even when the State makes the sentencing recommendation that it promised it would make, it can still breach the plea agreement by making additional comments at sentencing that effectively undermine its sentencing recommendation. See *State v. Woodward*, 288 Kan. 297, Syl. ¶ 3, 202 P.3d 15 (2009) ("The State can breach a plea agreement by effectively arguing against the negotiated sentencing recommendation. However, if the State actually makes the sentence recommendation that it promised, the prosecutor's further comments in support of the recommended sentence

do not breach the plea agreement so long as the comments do not effectively undermine the recommendation."); *Hill*, 247 Kan. at 378-79, 386 (plea agreement required State to recommend controlling term of two consecutive life sentences; at sentencing, prosecutor informed district court that PSI report contained not only recommended sentence, but also victim impact statements, which prosecutor described as indicating victims believed no amount of time would be sufficient punishment; this court found that "[a]lthough the additional comments by the prosecutor were questionable in light of the plea agreement," the materials in the PSI stated that victims accepted recommended sentence; accordingly, this court concluded that "additional comments by the prosecutor were not tantamount to making a recommendation contrary to the plea agreement"); *Foster*, 39 Kan. App. 2d at 387 ("A prosecutor does not need to be enthusiastic in making the recommendation agreed upon in the plea bargain. [Citation omitted.] But the prosecutor must at least *make* the recommendation, and the prosecutor may not so undermine the recommendation that only lip service has been paid to it.").

Several factors are relevant for determining whether a prosecutor's additional comments at sentencing undermine his or her sentencing recommendation, thereby violating the plea agreement. Courts must consider how restrictive the terms of the plea agreement are in preventing the prosecutor from making the comments at issue. For example, in *State v. Crawford*, 246 Kan. 231, 787 P.2d 1180 (1990), the State agreed not to oppose concurrent sentences or seek a controlling sentence of more than 20 years. Notably, however, the State did reserve the right at sentencing to comment on sentencing factors found in K.S.A. 21-4606 (criteria for fixing the minimum term of a sentence for a crime committed prior to July 1, 1993). At sentencing, the prosecutor did not oppose concurrent sentences or request more than a 20-year controlling term, but the prosecutor did emphasize several sentencing factors in K.S.A. 21-4606 that were unfavorable to the defendant. On appeal, this court held that the prosecutor's statements did not violate the plea agreement because the State specifically reserved its right to comment on the K.S.A. 21-4606 factors and the State did, in fact,

make the sentencing recommendations that it promised. Furthermore, the court noted that unlike the comments at issue in *United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977) (prosecutor expressed reservations at sentencing about concurrent sentences being imposed pursuant to plea agreement), the prosecutor's comments did not reach the level of effectively arguing against concurrent sentences being imposed. *Crawford*, 246 Kan. at 236-37.

In *State v. Johnson*, 258 Kan. 100, 899 P.2d 484 (1995), the State agreed to take no position at sentencing as to whether the district court should impose concurrent or consecutive sentences. At sentencing, the prosecutor provided a detailed factual account supporting the defendant's convictions for murder and aggravated kidnapping. After doing so, the prosecutor began to comment on how the factors of K.S.A. 21-4606 applied to the case. Before she could get into the merits of her argument, however, defense counsel objected, and the district court sustained the objection. The prosecutor then quickly wrapped up her statement. On appeal, this court rejected the defendant's argument that the prosecutor's comments essentially advocated for consecutive sentences in violation of the plea agreement. This court held that the prosecutor's statements did not violate the plea agreement because the State did not negotiate away its right to speak at the sentencing hearing. We stated:

"In speaking to the court, the State had the right to and did state the extent of defendant's participation in the crimes. A less than truthful soft pedaling or whitewashing of the extent of defendant's participation in stating the facts to the court would have been inappropriate. *On the other hand, editorializing on the facts could be considered as urging consecutive over concurrent sentences, the only issue before the court at sentencing as both offenses were class A felonies.*

"In reviewing the prosecutor's comments themselves and also in their proper context within the sentencing proceeding, we conclude the comments were not tantamount to making a recommendation contrary to the plea agreement." (Emphasis added.) *Johnson*, 258 Kan. at 107.

See also *Foster*, 39 Kan. App. 2d 380, Syl. ¶ 3 ("A prosecutor may present information at sentencing that is relevant to the decisions the judge is required to make.").

Additionally, in *Antrim*, the State agreed to recommend a life sentence with a mandatory minimum term of 25 years' imprisonment on each count (three counts of aggravated indecent liberties with a child) with the sentences to run concurrently. The plea agreement specifically recognized that although the defendant was " 'free to seek any alternative sentence allowed by law,' " the State would oppose any such effort. *Antrim*, 294 Kan. at 633. At sentencing, the defendant moved for a departure sentence and supported his motion by presenting testimony from a clinical psychologist. As expected, the prosecutor cross-examined the clinical psychologist. Following the clinical psychologist's testimony, the district court proceeded directly to sentencing. The court expressly requested that the State incorporate its argument against the motion for departure into its recommendation for disposition. The defendant did not object to this procedure, and the prosecutor stated:

" 'Judge, I'm asking the Court to follow the plea agreement. This is a situation where the defendant has had some concessions. We dismissed some counts for this plea, three counts of aggravated indecent liberties. I'm asking the Court to run the counts concurrently. In the end it's one life sentence with a minimum of 25 years' incarceration.

. . . .

" 'He has now perpetuated through his own daughter exactly what [the clinical psychologist] has diagnosed the defendant with, which is she's going to have difficulty in her future. This has changed her life by his act. The defendant can say all he wants. He didn't force her. He asked and she gave in. She was 7. A 7-year-old does not give in to sexual requests.

" 'I'm asking the Court to follow this plea agreement, Judge.' " *Antrim*, 294 Kan. at 633.

The district court denied the defendant's motion to depart and decided not to follow the parties' plea agreement, ultimately imposing consecutive life sentences with a mandatory minimum term of 25 years' imprisonment on each count. On appeal, the defendant argued that the State violated the plea agreement by effectively arguing against concurrent sentences. As support for his argument, the defendant focused on the prosecutor's cross-examination of the clinical psychologist and the prosecutor's subsequent comment that the defendant " 'perpetuated through his own daughter exactly

what [the clinical psychologist] has diagnosed the defendant with, which is she's going to have difficulty in her future.' " *Antrim*, 294 Kan. at 634. We rejected the defendant's argument based in part on the fact that the plea agreement specifically allowed the State to oppose the defendant's request for a departure sentence. We stated:

"Consistent with the plea agreement, the prosecutor cross-examined the expert and argued against the expert's conclusions. Moreover, the court specifically requested that the prosecutor combine his argument against the motion for departure with the State's recommended disposition, and the defendant did not object to this procedure.

. . . .

"[T]he plea agreement at issue here required the State to recommend concurrent sentences, and the prosecutor explicitly twice made that recommendation. But the agreement also indicated that the State would oppose any attempt by [the defendant] to seek an alternative sentence, and the prosecutor acted in accordance with that agreement by opposing [the defendant's] motion for a departure from the mandatory minimum sentence of Jessica's Law. Under these circumstances, we conclude the State did not breach the plea agreement." *Antrim*, 294 Kan. at 635-36.

*Crawford, Johnson,* and *Antrim* establish that when the terms of a plea agreement require a prosecutor to make a sentencing recommendation but otherwise allow the prosecutor to discuss relevant information at sentencing (*e.g.,* facts regarding the convictions or application of sentencing factors) or to argue against the defendant's request to receive a lesser sentence than what was agreed to in the plea agreement, then the prosecutor's statements at sentencing addressing the relevant information or opposing the lesser sentence will likely be viewed as proper comments and not as effectively undermining the sentencing recommendation.

Similarly, prior cases indicate that comments will likely not be construed as undermining the recommended sentence if they are made in response to defense counsel's attempt at sentencing to portray the defendant in a favorable light. In *Woodward*, the defendant agreed to plead guilty to kidnapping, two counts of sexual exploitation of a child, rape, indecent liberties with a minor, and felony murder. In exchange, the State agreed to recommend that concurrent sentences be imposed for all the convictions, other than

felony murder, resulting in a controlling sentence of life. For the felony-murder conviction, the State would recommend a consecutive sentence of 10 years to life. *Woodward*, 288 Kan. at 298-301.

At sentencing, defense counsel spoke first, describing her client in a favorable manner and indicating that the victims' families had been consulted about the sentence recommendation and had agreed to it. Defense counsel asked the district court to follow the plea agreement but also asked that the court make provisions so the defendant could get treatment. After defense counsel finished, the defendant's wife spoke, also describing the defendant in a favorable manner. The prosecutor then made her statement to the court, asking that the court impose the parties' recommended sentence. Notably, the prosecutor also made comments in response to defense counsel's statements. This court provided a summary of the prosecutor's comments:

"The prosecutor commenced by clarifying that the sentencing recommendation was that of the district attorney's office, not that of the victims. The prosecutor then reminded the judge, who had also presided at trial, of the heinous nature of the offenses and the losses suffered by the victims' families. She referenced the [defendant's] diagnosis of pedophilia and opined that 'the help that can be best afforded to [the defendant] is to make him not dangerous to the community and not dangerous to himself by incarcerating him.' The prosecutor pointed to facts that called into question the defense statements that [the defendant] was a 'good father.' She described circumstances that refuted the assertion that the killing was accidental, such as [the defendant's] failing to call for emergency help, throwing the child's body in a ditch, and hiding the homicide for 5 years. She argued that [the defendant's position as] a law enforcement officer actually made the circumstances more egregious because of the trust that position should engender." *Woodward*, 288 Kan. at 302.

Ultimately, the district court declined to impose the recommended sentence and instead imposed a controlling sentence of life plus a consecutive sentence of 30 years to life.

On appeal, the defendant argued that the prosecutor, by making the negative comments described above, effectively undermined the sentencing recommendation. This court rejected the defendant's argument, noting that when the context of the entire sentencing hearing was considered, it was clear that the prosecutor's arguments were

"directly tailored to address the defense's attempt to cast [the defendant] in a favorable light. The plea-bargained recommended sentence was not the minimum which the court could impose. If the sentencing court had found the defense's proffered mitigation to be compelling, it was not precluded from doing something less than recommended, such as running all of the convictions concurrently. [Citation omitted.] In that context, the State was free to argue why the recommended sentence was also the most appropriate sentence to impose under the circumstances. The plea agreement did not require the prosecutor to ignore the defense's attempts to minimize [the defendant's] culpability.

"Accordingly, we find that the prosecutor made an unequivocal recommendation that the sentencing court impose a sentence of life plus 10 years to life, as provided in the plea agreement. Nothing the prosecutor said at the sentencing hearing was intended to undermine the State's recommendation or to suggest that the sentencing court impose a harsher sentence." *Woodward,* 288 Kan. at 302-03.

Notably, *Woodward's* reasoning (*i.e.,* statements made in response to defense counsel's attempt to cast the defendant in a favorable light will not be construed as undermining the recommended sentence) provided an additional basis in *Antrim* for this court to conclude that the statements at issue in that case were proper. See *Antrim,* 294 Kan. at 635 (based on *Woodward* and the language of the plea agreement allowing State to oppose any attempt by the defendant to seek a lesser sentence than what was agreed to by the parties, prosecutor acted appropriately when he made statements at sentencing in response to defense counsel's argument in support of granting departure motion).

Further, based on the Court of Appeals decision in *Foster* and this court's decision in *Antrim,* the level of discretion the district court has to impose the recommended sentence is a factor to consider when deciding whether a prosecutor effectively argued against the recommended sentence at sentencing. In *Foster,* the defendant pleaded guilty to aggravated assault, a severity level 7 person felony, in exchange for the State's promise to recommend probation if the defendant's criminal history score was, at the most, a C. Ultimately, it was determined that the defendant had a criminal history score of C, placing him in a presumptive probation box. But, because the defendant used a handgun to commit the aggravated assault, K.S.A. 21-4704(h) provided that the defendant could only receive probation if the district court specifically found that

probation would serve community safety interests by promoting the defendant's reformation. *State v. Foster*, 39 Kan. App. 2d 380, 380-82, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008).

At sentencing, the prosecutor commented first. Although the prosecutor recommended probation, she provided generally negative information about the defendant, and she never suggested that the district court could make the findings required to grant probation. Ultimately, the district court declined to place the defendant on probation and instead imposed a prison sentence of 27 months.

On appeal, the Court of Appeals concluded that the prosecutor's comments undermined her sentencing recommendation and, thus, violated the plea agreement. The court stated:

"[The] prosecutor said that she recommended probation, but the words she used [at sentencing] do not meet the minimum requirements for a recommendation. Recommend means 'to praise or commend (one) to another as being worthy or desirable,' or 'to make (the possessor, as of an attribute) attractive or acceptable.' American Heritage Dictionary 1460 (4th ed. 2000). The prosecutor here did not state anything that would cause an objective person to conclude that probation was worthy, desirable, attractive, or even acceptable.

"A prosecutor does not need to be enthusiastic in making the recommendation agreed upon in the plea bargain. [Citation omitted.] But the prosecutor must at least *make* the recommendation, and the prosecutor may not so undermine the recommendation that only lip service has been paid to it. In our case, the recommendation of probation was meaningless unless the trial court could make the finding required by statute that community safety interests would be promoted through offender reformation if [the defendant] were placed on probation. The prosecutor never said that such a finding would be proper in [the defendant's] case and provided information that appears to the contrary. That breaches the plea agreement." *Foster*, 39 Kan. App. 2d at 386-87.

The *Foster* panel made clear that its decision should not be construed as precluding a prosecutor from presenting negative information about a defendant at sentencing even if the prosecutor promised to make a sentencing recommendation pursuant to a plea agreement. If the information is relevant to decisions the district court must make, then the information should be presented at sentencing. To illustrate this point, the panel noted that the prosecutor in its case properly requested a no-contact order at sentencing and presented information to support granting that order.

But the panel noted that because this information could indicate that placing the defendant on probation would not serve community safety interests (leading the court to reject the recommended sentence), the prosecutor had a duty to provide the district court with some rationale to support placing the defendant on probation. Because the prosecutor did not even attempt to do this at sentencing, the *Foster* panel concluded that her statements at sentencing undermined her sentencing recommendation and, thus, violated the plea agreement. *Foster*, 39 Kan. App. 2d at 389-90.

In *State v. Antrim*, 294 Kan. 632, 279 P.3d 110 (2012), the defendant relied on *Foster* to argue that the prosecutor's statements at sentencing effectively undermined the recommended sentence. This court, however, found that *Foster* was distinguishable because the district court in that case could not impose the sentence recommended in the plea agreement without making an additional factual finding. In contrast, the district court in *Antrim* could have imposed the parties' recommended sentence (concurrent sentences) based solely upon their recommendations at sentencing. By making this distinction between the two cases, we suggested in *Antrim* that if a district court has limited discretion to impose the recommended sentence (*e.g.*, it must make specific factual findings before it can impose the recommended sentence), then the possibility increases that improper comments by the prosecutor at sentencing will be construed as effectively undermining the recommended sentence. See *Antrim*, 294 Kan. at 635.

*Analysis*

Under the plea agreement in this case, the prosecutor agreed to recommend at sentencing that the district court impose a standard sentence for the base offense (aggravated robbery) and impose concurrent sentences for Urista's other crimes, resulting in a controlling sentence of 102 months' imprisonment. Furthermore, both parties agreed not to seek a disposition and/or durational departure sentence.

Clearly, the terms of the plea agreement show that the State did not negotiate away its right to speak at the sentencing hearing. Contra *State v. Peterson*, 296 Kan. 563, 564, 293 P.3d 730 (2013)

(State agreed to stand silent at sentencing except to correct misstatements of fact). Pursuant to *Johnson* and *Foster*, the prosecutor, in addition to making the sentencing recommendation, could also present relevant information (a factual account of the crimes and statements from the victims regarding the crimes) at sentencing to aid the district court in making its decision regarding what sentence to impose. See *Johnson*, 258 Kan. at 107 ("In speaking to the court, the State had the right to and did state the extent of defendant's participation in the crimes. A less than truthful soft pedaling or whitewashing of the extent of defendant's participation in stating the facts to the court would have been inappropriate."); *Foster*, 39 Kan. App. 2d 380, Syl. ¶ 3 ("A prosecutor may present information at sentencing that is relevant to the decisions the judge is required to make.").

But the comments at issue in this case do not constitute a mere factual description of the crimes or a summary of the victims' statements. Instead, the comments at issue here were an example of the prosecutor giving her personal opinion regarding Urista based upon her prior involvement with him, her review of the facts, and the victims' statements. In other words, the prosecutor not only engaged in providing a negative editorial, but a particularly grave summation regarding Urista based on these observations. Such comments can be viewed as effectively arguing against the parties' recommended sentence. See *Johnson*, 258 Kan. at 107 (noting that in its case, "editorializing on the facts could be considered as urging consecutive over concurrent sentences" in violation of the plea agreement). Based on the terms of the plea agreement, we find the comments at issue here were improper under the agreement.

Furthermore, the prosecutor's statements were not made in response to arguments presented by the defense; the prosecutor spoke first at sentencing. Thus, this case is distinguishable from *Antrim* and *State v. Woodward*, 288 Kan. 297, 202 P.3d 15 (2009), where we found that the comments at issue in those cases did not violate the plea agreement because they were made in response to defense counsel's arguments. Additionally, Urista, in compliance with the plea agreement, did not file a departure motion prior to sentencing or ask for a sentence less than the recommended sen-

tence of 102 months' imprisonment. Although the district court had discretion to impose a mitigated sentence of 96 months, the comments here cannot be construed as the prosecutor's attempt to preemptively argue against imposing a sentence less than the recommended sentence. Consequently, there is nothing in the record to explain why the prosecutor thought it was necessary to make the comments at issue.

Though the district court had the discretion to impose the recommended sentence based purely on the parties' recommendations at sentencing, see K.S.A. 21-4720(b), we find that the prosecutor's comments about Urista effectively undermined the sentencing recommendation. The prosecutor's comments certainly did not provide any support for imposing concurrent sentences. In fact, they implicitly convey to an objective person that the recommended sentence may not be adequate punishment for Urista's crimes. Furthermore, we cannot imagine any substantive difference between the comments the prosecutor made here (supposedly in support of the recommended sentence) and comments that would be explicitly made in support of imposing a sentence greater than the recommended sentence. Because the prosecutor's comments were unprovoked and unnecessary, one would have to assume that her intention for making the comments was to convince the district court to impose a sentence greater than the recommended sentence. Thus, we are convinced that the prosecutor did not act in good faith at sentencing. Though she made the sentencing recommendation, her additional comments at sentencing indicate that she merely paid lip service to the recommendation. Accordingly, we hold that the prosecutor violated the plea agreement by making the statements at issue.

As mentioned above, when a plea agreement is breached, the defendant is denied due process. *McDonald*, 29 Kan. App. 2d 6, Syl. ¶ 1. This is true even if the sentencing judge was not influenced by the State's presentation at sentencing. See *Foster*, 39 Kan. App. 2d at 390. Accordingly, if the State breaches its plea agreement promise—and the defendant raises a timely objection to the breach—such a breach will constitute harmless error only if a court can say beyond a reasonable doubt that the State's promise had

little, if any, influence on the defendant's decision to enter into the plea agreement. *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). See *Puckett v. United States*, 556 U.S. 129, 140, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009) (suggesting that harmless-error analysis applies to government's breach of plea agreement when defendant raised contemporaneous objection before district court regarding breach); *McDonald*, 29 Kan. App. 2d at 10-11 (explaining application of harmless-error standard to breach of plea agreement); *State v. McDaniel*, 20 Kan. App. 2d 883, 888-89. 893 P.2d 290 (1995) (same).

The only consideration that the State offered in exchange for Urista's agreement to enter no contest pleas to 15 crimes (including three counts of aggravated robbery) was its promise to recommend concurrent sentences, resulting in a controlling term of 102 months' imprisonment. Needless to say, the State's promise to recommend concurrent sentences played a significant role in Urista's decision to enter into the plea agreement. Because this central promise of the plea agreement was breached by the prosecutor's comments at sentencing—and Urista raised a timely objection at sentencing regarding the comments—we find that the breach cannot be declared harmless. The appropriate remedy—specific performance, as requested by Urista—is to vacate the sentence and remand for a new sentencing hearing before a different district court judge with directions that the State comply with the provisions of plea agreement at sentencing. See *Peterson*, 296 Kan. 563, 574; *Foster*, 39 Kan. App. 2d at 390; *McDonald*, 29 Kan. App. 2d at 11; *McDaniel*, 20 Kan. App. 2d at 889. Our decision to direct a new sentencing hearing before a different judge in no way reflects on the district court judge who originally sentenced Urista. The error here rests squarely with the State. The appearance of judicial neutrality will be best served if the new sentencing hearing is conducted by a different judge. See *United States v. Melton*, No. 11-5023, 2012 WL 5383294, at *1 n.1 (4th Cir. 2012 (unpublished opinion).

Because we vacate Urista's sentence and remand for a new sentencing hearing, we do not address the other issues (related to sentencing) that he raises on appeal. See, *e.g.*, *State v. Montgom-*

*ery*, 295 Kan. 837, Syl. ¶ 2, 286 P.3d 866 (2012) (courts generally do not decide moot questions or render advisory opinions).

We reverse the judgments of the Court of Appeals and the district court. The sentence entered is vacated, and the case is remanded for a new sentencing hearing before a different judge with directions that the State comply with the provisions of the plea agreement.