NOT DESIGNATED FOR PUBLICATION

Nos. 122,361
122,362

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER ROBERT BURNUP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed June 3, 2022. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Sommer Mackay*, legal intern, *Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: The sole issue in this appeal is Christopher Burnup's claim that the district court abused its discretion in refusing to permit Burnup to withdraw his guilty pleas to the State's charges of felony theft and tampering with electronic monitoring equipment. These charges were asserted in two separate cases, which were consolidated for disposition in the district court and have been consolidated for this appeal. For our purposes we need not distinguish between these two cases but can treat them as one.

1

The felony theft charge was based on Burnup's theft of seven pairs of eyeglass frames from Invision Eyewear at the Oak Park Mall in Overland Park. The tampering with electronic monitoring equipment charge was based on the removal of a GPS house arrest bracelet Burnup was required to wear as a condition of his bond.

Burnup entered into plea agreements with the State in both cases. They are essentially identical, and we will refer to them in the singular throughout this opinion.

The written plea agreement included the following:

> "[T]he following recommendations shall be made to the Court at the time of sentencing, *and are expressly conditioned upon the defendant's appearance at sentencing as ordered, compliance with bond conditions as ordered prior to sentencing, and no new violations of Federal, State, or local law prior to sentencing*."

The agreement provided that Burnup would plead guilty to both charges in exchange for the State recommending probation.

On April 26, 2019, Burnup entered his pleas consistent with the plea agreement. The district court accepted his pleas, found him guilty, and set the matter over for sentencing on June 6, 2019. The court also released Burnup on a signature bond, subject to certain conditions.

Burnup was, at the time, on probation in Jackson County, Missouri. He had been charged with a probation violation there, and the Jackson County authorities had placed a detainer on him while he was in custody in Johnson County. Because of this detainer, following the plea hearing, rather than being released on bond, Burnup remained in custody until May 1, 2019, when the Jackson County authorities took him into custody

2

and transported him back to Jackson County. As a result, Burnup failed to appear at his scheduled sentencing on June 6, 2019.

The Jackson County authorities returned Burnup to Johnson County on July 30, 2019, after Burnup completed the sanction imposed for his probation violation in Missouri. The following day the district court held a sentencing hearing. At that hearing, the State expressed its intent to ask the court to impose prison sentences without probation because of Burnup's failure to appear at the originally scheduled sentencing hearing, which was a breach of the plea agreement.

The State also noted Burnup's history of about 35 prior convictions, substantially more than the State was aware of at the time the plea agreement was entered into, and a criminal history that likely would not result in a successful probation.

> "[THE STATE]: He did fail to appear for sentencing, so I'm not asking you to follow that plea agreement. I'm asking you to impose low box and send him to prison.
>
> "Looking at this case, when he got his PSI back, I was perplexed why, given the offer I did initially, when I look at our criminal history check I did, it had maybe four convictions on it. So I'm not sure where the disparity was between those two. But my offer made more sense to me in light of what I was looking at at the time.
>
> "And then when he failed to appear in June, I understand he was in custody, but he's in custody because he has so many cases that we can't keep these straight at this point. He has a revocation I think in Jackson County.
>
> . . . .
>
> ". . . I mean, we already know he's going to go back over to Jackson County I think after this. So his ability to do probation, it isn't there. . . .
>
> . . . .
>
> "So at this point, I think imposing the minimum sentences and sending him to prison is probably the best for him . . . . I think his ability to be successful at this point [on probation] is probably not there."

3

Rather than sentence Burnup at the hearing, the district court ordered a continuance of the hearing to August 26, 2019, to give Burnup the opportunity to modify his motion for a dispositional departure and to give Burnup time to obtain a drug treatment evaluation, which had been a part of the parties' plea agreement but had not been completed due to Burnup being detained in Missouri.

On August 26, 2019, the district court held its final sentencing hearing. Burnup's counsel, noting the provision in the plea agreement for a recommendation of probation, argued in support of Burnup's motion for a dispositional departure based upon Burnup's need for substance abuse treatment. The State referred to its earlier remarks made at the July 31, 2019 hearing and recommended a low box prison sentence for both convictions, arguing that Burnup was not a good candidate for probation and noting Burnup's numerous drug crimes. Given Burnup's extensive criminal history and his substance abuse problem, the court found that Burnup was "beyond high risk of being out in the community while you're trying to deal with this [substance abuse problem]." The district court sentenced Burnup to consecutive prison sentences of 9 months and 28 months, consistent with the State's recommendations.

On September 6, 2019, Burnup moved to withdraw his pleas, arguing that "[t]he State's failure to abide by the terms of the plea agreement . . . represented gross mistreatment . . . and manifest injustice will result if he is not allowed to withdraw his guilty pleas." Following a hearing on December 13, 2019, the district court denied Burnup's motion, concluding that Burnup had failed to show manifest injustice to warrant withdrawing his pleas. This appeal followed.

ANALYSIS

On appeal, Burnup argues that the district court erred by denying his postsentence motion to withdraw his pleas. He contends that the State's decision not to honor the

parties' plea agreements and to recommend a prison term instead of probation resulted in manifest injustice that entitled him to withdraw his guilty pleas.

We review the district court's decision to deny a postsentence motion to withdraw a plea for an abuse of discretion. See *State v. Cott*, 311 Kan. 498, 499, 464 P.3d 323 (2020). Abuse of discretion occurs if the district court's decision was arbitrary, fanciful, or unreasonable, or based on an error of law or fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). Here, Burnup bears the burden to prove the district court erred in denying his motion. See *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

In considering whether a defendant has shown manifest injustice as a basis for withdrawing a plea after sentencing, the court generally considers the same factors that must be considered in determining whether a defendant has shown good cause to withdraw a plea before sentencing. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). Those factors, commonly referred to as the *Edgar* factors, are (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). Here, Burnup relies on the second *Edgar* factor, claiming that the State's failure to follow the plea agreement resulted in the State taking unfair advantage of him.

We would otherwise be hampered by the fact that the record does not contain a transcript of the hearing on Burnup's motion to withdraw his plea. We have only the order denying the motion, which simply states that "the Court does not find manifest injustice has occurred." But here, whether the State breached the plea agreement presents a question of law over which our review is unlimited. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015). Thus, we are able to consider the matter without reference to the transcript of the hearing.

5

We apply contract principles in construing a contract and in determining the rights and obligations of the parties. A plea agreement is a contract between the defendant and the State, so contract principles generally apply. *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013).

The facts in *Urista* are the opposite of those now before us. In *Urista*, the parties entered into a plea agreement which was presented to the court at the sentencing hearing and which each party purported to support. The agreement called for probation. The State did not disavow the agreement, but in recommending probation to the court, the prosecutor stated that the probation recommendation was in spite of the fact that the defendant was "'a very dangerous young man'" who, unless he changed his ways, is "'going to kill somebody . . . or somebody's going to kill him.'" 296 Kan. at 579-80. The prosecutor described the defendant as a person without remorse, compassion, sympathy, or empathy who did not care about "'the havoc that he has wreaked on this community.'" 296 Kan. at 580. He described the defendant as "'street savvy'" with "'no qualms about shooting somebody.'" 296 Kan. at 580. He concluded that the defendant "'has had every opportunity . . . to do right and he has chosen to do wrong.'" 296 Kan. at 580 The district court rejected the probation recommendation and sent the defendant to prison. On appeal, our Supreme Court stated: "[W]hen the State makes the sentencing recommendation that it promised it would make, it can still breach the plea agreement by making additional comments at sentencing that effectively undermine its sentencing recommendation." 296 Kan. at 584.

In our present case, Burnup recommended probation but the State did not, based on Burnup's failure to appear at his originally scheduled sentencing hearing. Burnup had filed a departure motion, and his counsel argued for probation at the sentencing hearing. The prosecutor's remarks regarding Burnup's extensive criminal history were in response to Burnup's request for probation in spite of his failure to appear at his original

sentencing. These remarks were proper if the State was correct that it was not bound by the plea agreement due to Burnup's failure to appear at the original sentencing hearing.

Burnup asserts that his failure to appear at his sentencing hearing was involuntary due to being in custody in Missouri for a probation violation that occurred before he entered his pleas. Burnup argues that because his nonappearance was involuntary, the State breached its covenants of good faith and fair dealing by choosing not to follow the plea agreement and recommend probation.

There is no evidence that when the plea agreement was entered into the State knew that Burnup was on probation in Missouri or that Missouri had issued a detainer based on Burnup's violation of the terms of his Missouri probation. Burnup argues that he also was unaware of the detainer when he entered into the plea agreement. But he clearly knew that he was on probation in Missouri, he knew the terms of his probation, and he knew whether he was in breach of any of those terms.

The State finds support in *State v. King*, No. 111,786, 2015 WL 5036739 (Kan. App. 2015) (unpublished opinion). In *King*, the defendant pled guilty to five felonies pursuant to a plea agreement. In exchange, the State agreed to recommend probation at sentencing. The plea agreement was expressly conditioned upon the defendant appearing for sentencing as ordered. King failed to appear at sentencing because after entering her plea she was arrested on out-of-state felony charges. The charges were based on conduct that occurred prior to King entering her plea. At a rescheduled sentencing hearing, the State declined to recommend probation based on King's failure to appear at her original sentencing hearing. The district court denied probation and imposed a prison sentence.

On appeal, the court concluded that the State had not breached the plea agreement or denied King due process. 2015 WL 5036739, at *2. Rather, King failed to satisfy a condition precedent that, if satisfied, would have obligated the State to comply with the

7

terms of the plea agreement and recommend probation. In so concluding, the district court noted that the involuntary nature of the defendant's nonappearance did not matter because she was aware of the pending out-of-state charges when she entered her plea. The court stated:

> "The failure-to-appear clause in King's plea agreement created a 'condition precedent,' which is defined by the Kansas Supreme Court as 'something that it is agreed must happen or be performed before a right can accrue to enforce the main contract. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced.' *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543 (1965). King had to satisfy this condition precedent in order to hold the State to its contractual obligation to recommend probation. She failed to fulfill that condition, thus the State was relieved of its obligation to recommend probation. The State did not breach the plea agreement.
> "While King maintains that her failure to appear was not of her own volition because she was detained in Iowa on other charges, her statements at her sentencing hearing make it clear that she knew when she entered the plea agreement that it was possible for Iowa to press criminal charges against her, but she thought Iowa was not planning to charge her. It was reasonable for the State to condition its sentencing recommendation on King's appearance at sentencing as ordered when the State was agreeing to recommend probation." *King*, 2015 WL 5036739, at *2.

We find *King* to be persuasive. Burnup's plea agreement expressly stated:

> "[T]he following recommendations shall be made to the Court at the time of sentencing, *and are expressly conditioned upon the defendant's appearance at sentencing as ordered, compliance with bond conditions as ordered prior to sentencing, and no new violations of Federal, State, or local law prior to sentencing*."

Although Burnup's plea agreement expressly provided that the State would recommend probation at sentencing, the plea agreement also expressly conditioned the State's performance on Burnup appearing at the originally scheduled sentencing hearing. He did

not. Though his absence was due to the outstanding detainer, Burnup knew when he entered into the plea agreement that he was under probation supervision in Missouri and that he was at risk of being detained and missing his sentencing hearing due to having violated his Missouri probation.

Under these circumstances, we conclude that Burnup failed to meet his burden of showing manifest injustice and the district court did not err in denying Burnup's motion to withdraw his pleas.

Affirmed.