NOT DESIGNATED FOR PUBLICATION

No. 117,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGEL RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed April 27, 2018. Conviction affirmed, sentence vacated, and remanded with directions.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM:  Angel Rodriguez argues that his sentence is illegal because the district court erred when it classified his prior New Jersey conviction for "assault with intent to rape" under N.J. Stat. Ann. § 2A:90-2 as a person felony for criminal history purposes. He further argues that the State breached its plea agreement with him during sentencing. For reasons set out below, both of Rodriguez' arguments are persuasive. Accordingly, this court will vacate Rodriguez' sentence and remand for resentencing with the following directions:  (1) that his prior New Jersey conviction for assault with intent

1

to rape be classified as a nonperson crime for criminal history purposes; and (2) that the State comply with the terms of his plea agreement.

In August 2008, the State charged Rodriguez with 69 counts of sexual exploitation of a child, each severity level 5 person felonies in violation of K.S.A. 21-3516, for alleged acts he took between 2004 and 2006. Following a preliminary hearing, the district court bound Rodriguez over for trial on 53 of the 69 charges.

In August 2009, the district court held a plea hearing. At this hearing, the prosecutor recited the terms of the plea agreement. He stated that under the plea agreement, the State would dismiss all but one of the 53 counts of sexual exploitation of a child with prejudice in exchange for Rodriguez' *Alford* plea to the single count of sexual exploitation of a child. *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The prosecutor also stated the following were terms of the plea agreement: "Just no departures, Your Honor. It's contemplated, but again the parties know that we have no control or bearing on that, but he is probably a (A) criminal history and be sentenced in column A at the time of sentencing." Rodriguez' attorney then added that under the plea agreement, the State also agreed to recommend that Rodriguez serve the standard presumptive sentence under the Kansas Sentencing Guidelines Act (KSGA). The prosecutor concurred that this was a term of the plea agreement.

After reciting these plea agreement terms, the district court accepted Rodriguez' *Alford* plea. The district court sentenced Rodriguez to 130 months' imprisonment followed by 24 months' postrelease supervision based upon his criminal history score of A.

About five years later in October 2014, Rodriguez moved pro se to correct illegal sentence. The district court denied Rodriguez' motion, and Rodriguez appealed to this court. In *State v. Rodriguez*, No. 114,264, 2016 WL 3961375, at *4-6 (Kan. App. 2016)

2

(unpublished opinion), this court vacated Rodriguez' sentence and remanded for resentencing with directions that his 1997 Nevada burglary be classified as a nonperson felony because consideration of this conviction as a person felony violated Rodriguez' rights as explained in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

Upon remand, with his 1997 Nevada burglary classified as a nonperson felony, Rodriguez' new criminal history score was B. At sentencing, the State requested that the district court impose the aggravated presumptive sentence. Rodriguez objected, asserting that under his plea agreement with the State, the State agreed to recommend the standard presumptive sentence. The State responded that the plea agreement was no longer binding because it was contingent upon Rodriguez having a criminal history score of A. The district court reviewed Rodriguez' plea hearing transcript and found that Rodriguez having a criminal history score of A was part of the plea agreement. Thus, the district court ruled that the State was no longer bound by the terms of the plea agreement. The district court then imposed the aggravated presumptive sentence of 128 months' imprisonment followed by 24 months' postrelease supervision. Included within Rodriguez' criminal history was his 1977 New Jersey conviction for "assault with intent to rape" under N.J. Stat. Ann. § 2A:90-2.

*Is Rodriguez' Sentence Illegal?*

Rodriguez' first argument, which he concedes that he is raising for the first time on appeal, is that the district court erred when it used his 1977 New Jersey assault with intent to rape conviction under N.J. Stat. Ann. § 2A:90-2 to enhance his sexual exploitation of a child sentence. Rodriguez makes two arguments why his sentence is illegal. First, he argues that the district court should not have counted his assault with intent to rape conviction as a felony based upon the plain language of K.S.A. 21-4711(e).

3

Second, he argues that the district court should not have counted his assault with intent to rape conviction as a person crime because counting it as a person crime violates his rights under *Apprendi* and *Descamps*.

Pointing to the law of the case doctrine, the State first responds that neither of Rodriguez' arguments are properly before this court. The State next responds that even if Rodriguez' arguments were properly before this court, they fail for the following reasons: (1) because under New Jersey law, his conviction for assault with intent to rape constitutes a felony; (2) because under Kansas law, his conviction for assault with intent to rape constitutes a person crime.

*Standard of Review*

Appellate courts have unlimited review over whether a sentence is illegal under K.S.A. 22-3504. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). To the extent Rodriguez' argument involves statutory interpretation, appellate courts also have unlimited review over statutory interpretation. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The most fundamental rule of statutory interpretation is that the intent of the Legislature, as determined by the plain language of a statute, governs. *State v. Jordan,* 303 Kan. 1017, 1019, 370 P.3d 417 (2016). This means that while engaging in statutory interpretation, ordinary words must be given their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Statutes should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *Barlow*, 303 Kan. at 813. Additionally, courts should not turn to the canons of statutory construction or legislative history to ascertain legislative intent if the language of the statute is plain and unambiguous. 303 Kan. at 1019.

*Preservation*

Under K.S.A. 22-3504(1) courts may correct an illegal sentence at any time. In *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015), our Supreme Court held that defendants' challenges to the classification of prior crimes for criminal history purposes constituted challenges to the legality of their sentences under K.S.A. 22-3504(1). Thus, defendants alleging criminal history score errors may do so for the first time on appeal.

In his brief, Rodriguez relies on *Dickey* while arguing that he can raise his sentencing arguments for the first time on appeal. Although at one point in its brief the State recognizes that Rodriguez is challenging the legality of his sentence, the State still argues that Rodriguez' argument is barred under the law of the case doctrine. According to the State, Rodriguez' failure to raise his arguments concerning his New Jersey assault with intent to rape conviction in his prior appeal to this court means that this court should not now consider his arguments.

Yet, the law of the case doctrine is "'a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.' [Citation omitted.]" *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998). Although the State refers to the law of the case doctrine, the law that the State is actually citing to concerns the doctrine of res judicata. In fact, the case the State relies on in making its law of the case argument—*State v. Neer*, 247 Kan. 137, 140-41, 795 P.2d 362 (1990)—did not address the law of the case doctrine. Instead, the case addressed the doctrine of res judicata. As a result, the State's argument is truly a res judicata argument.

Concerning the doctrine of res judicata, "[u]nder Kansas law, where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been

5

presented, but were not presented, are deemed waived." *Neer*, 247 Kan. at 140-41. Even so, "[t]he doctrine of res judicata or waiver does not apply to bar a claim when that claim, if true, would render a sentence illegal and the claim has not been previously addressed on its merits." *State v. Martin*, 52 Kan. App. 2d 474, Syl. ¶ 4, 369 P.3d 959 (2016), *rev. denied* 305 Kan. 1256 (2017). This is because doing so would undermine the plain language of K.S.A. 22-3504(1), which allows courts to correct an illegal sentence at any time. 52 Kan. App. 2d 474, Syl. ¶ 5. Thus, the State's contention that Rodriguez' sentencing arguments are somehow barred by either the law of the case or res judicata doctrines are incorrect. As a result, we will consider the underlying merits of Rodriguez' arguments.

*Relevant Law*

To fully address Rodriguez' and the State's arguments, it is first important to address the relevant law on classifying a defendant's prior criminal convictions for criminal history purposes.

When Rodriguez committed his crimes, the relevant statute on calculating criminal history was K.S.A. 21-4711. See also K.S.A. 21-5103(d). K.S.A. 21-4711(e) states:

> "Out-of-state convictions . . . will be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime."

According to his New Jersey journal entry of judgment, Rodriguez was specifically convicted of assault with intent to rape under N.J. Stat. Ann. § 2A:90-2,

6

receiving a 360-day sentence. Although Rodriguez was convicted of assault with intent to rape, N.J. Stat. Ann. § 2A:90-2 actually criminalizes assaulting another with the intent to commit a variety of crimes, with one of those crimes being rape. In its entirety, N.J. Stat. Ann. § 2A:90-2 states:

> "Any person who commits an assault with intent to kill, or to commit burglary, kidnapping, rape, robbery or sodomy, or to carnally abuse a female under the age of 16, with or without her consent, is guilty of a high misdemeanor, and shall be punished by a fine of not more than $3000, or by imprisonment for not more than 12 years, or both."

Of significance, when his convictions occurred, New Jersey classified all crimes except treason and murder as either misdemeanors or high misdemeanors. See *State v. Doyle*, 42 N.J. 334, 348, 200 A.2d 606 (1964).

In making its arguments on appeal, the State relies heavily on *Doyle* where the New Jersey Supreme Court considered whether a high misdemeanor constituted a common-law felony for which the police could arrest a defendant without a warrant. The *Doyle* court held that police may arrest a person based upon probable cause alone if they are pursuing that person for a crime that carries a punishment of over a year. 42 N.J. at 349.

Yet, in Rodriguez' reply brief, the cases that he primarily relies on—*State v. Horselooking*, 54 Kan. App. 2d 343, 400 P.3d 189 (2017), *rev. granted* (December 22, 2017), and *State v. Smith*, No. 116,586, 2017 WL 4558253 (Kan. App. 2017) (unpublished opinion)—were issued after he filed his original appellate brief. In *Horselooking*, Horselooking argued that the district court erred when it considered his Kickapoo tribal conviction for burglary as a felony for criminal history purposes; the Kickapoo criminal code did not designate the crime as either a misdemeanor or a felony. The State argued this court should affirm Horselooking's sentence based partly upon our

7

Supreme Court's earlier decision in *State v. Hernandez*, 24 Kan. App. 2d 285, Syl. ¶ 2, 944 P.2d 188 (1997), and *State v. Lackey*, 45 Kan. App. 2d 257, 246 P.3d 998 (2011).

In *Hernandez*, this court held that if the convicting jurisdiction did not define crimes as felonies or misdemeanors, then the sentencing court will determine if the defendant's prior crime constituted a felony by looking to the most comparable Kansas crime. 24 Kan. App. 2d at 288-89. The *Hernandez* court reached this holding because it concluded that this was the Legislature's intent when "the pertinent parts of the KSGA [were] construed *in pari materia*." 24 Kan. App. 2d at 289. The *Lackey* court reached the same decision, relying on the lack of legislative amendments to the statute since *Hernandez*. 45 Kan. App. 2d at 264-65.

Nevertheless, the *Horselooking* court disagreed with the *Hernandez* and *Lackey* courts' analysis and holdings. First, the *Horselooking* court, which was analyzing the recodified version of K.S.A. 21-4711(e), noted that although "[t]he KSGA expressly provide[d] how a sentencing court shall classify an out-of-state conviction if the crime [was] a felony or a misdemeanor in the convicting jurisdiction," "there [was] no explicit language in the KSGA explaining how a court [was] to classify an out-of-state conviction as either a felony or a misdemeanor when the convicting jurisdiction does not distinguish between the two." 54 Kan. App. 2d at 347. Second, the *Horselooking* court recited and then applied the rules of statutory interpretation. The *Horselooking* court explained: "[T]he Kansas sentencing statute [was] not ambiguous or unclear; instead, it lack[ed] any provision to explain how a court [was] to classify an out-of-state conviction as a felony or a misdemeanor when the convicting jurisdiction does not designate crimes as felonies or misdemeanors." 54 Kan. App. 2d at 350.

For this reason, the *Horselooking* court held that it would "refrain from speculating about the legislature's intent and . . . not insert a provision into the statute that the legislature failed to include—which [was] exactly what the panel of this court did in

8

*Hernandez*." 54 Kan. App. 2d at 350. The *Horselooking* court noted that our Supreme Court in *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), had recently addressed a different KSGA statutory interpretation issue and considered what courts should do in "silence gap" situations. That is, situations where the statute contains plain and unambiguous language but the statute still does not provide guidance on what to do in the situation at issue. Although the *Keel* court was able to determine the Legislature's intent by "the overall design and structure of the KSGA," the *Keel* court explained that the "default position" in "silence gap" situations was to "defer to the legislature to act to fill such a gap." 302 Kan. at 573-74. The *Horselooking* court further rejected the *Lackey* court's analysis because what the plain language of a statute reveals is the most important aspect of statutory interpretation; more important than legislative acquiescence, which may not always actually indicate the Legislature's intent. 54 Kan. App. 2d 352-53.

Since issuing the *Horselooking* decision, another panel of this court has adopted the *Horselooking* court's analysis when considering the Missouri ordinance for endangering the welfare of a child. In *Smith*, the district court classified Smith's prior conviction for endangering the welfare of a child to be a misdemeanor for criminal history purposes even though Missouri ordinances are not classified as misdemeanors or felonies but are instead "quasi-criminal in nature." 2017 WL 4558253, at *1-2. Smith appealed, arguing that the district court should not have included her municipal ordinance violation in her criminal history. The *Smith* court agreed, holding the following:

> "Because the KSGA is silent on how to classify an out-of-state ordinance violation when the convicting jurisdiction does not consider an ordinance violation to be a crime, then under the rationale of *Horselooking* and the rule of lenity, the district court erred in classifying Smith's Missouri ordinance violation of endangering the welfare of a child as a person misdemeanor and aggregating that ordinance violation with the two Johnson County, Kansas, person misdemeanor convictions to form one person felony." 2017 WL 4558253, at *5.

9

*Felony Classification Correct*

Turning our focus back to this case, we note that it is important to point out that this case is distinguishable from *Horselooking* and *Smith* because unlike the Kickapoo tribal code and Missouri ordinances at issue in those cases, New Jersey actually classifies crimes as misdemeanors—misdemeanors and high misdemeanors. Thus, Rodriguez argues that this court could simply hold that based upon the plain language of K.S.A. 21-4711(e), his assault with intent to rape conviction should have been classified as a misdemeanor for criminal history purposes. This is because New Jersey made assault with intent to rape a high misdemeanor and K.S.A. 21-4711(e) states that "[a]n out of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction."

The State, however, argues that although New Jersey's N.J. Stat. Ann. § 2A:90-2 statute listed the crime of assault with intent to rape as a high misdemeanor, the New Jersey Supreme Court adopted a method for determining whether a misdemeanor or high misdemeanor constitutes a felony offense under the common law, that is, the *Doyle* felony test. Accordingly, the State argues that despite the fact New Jersey's criminal code does not include the misdemeanor-felony criminal classification scheme, this court knows whether New Jersey would classify a misdemeanor or high misdemeanor as a common-law felony based on the *Doyle* felony test. The State concludes that because the maximum punishment for Rodriguez' assault with intent to rape conviction was 12 years in prison, his crime constitutes a felony under the *Doyle* felony test; in turn, his crime constitutes a felony for Kansas criminal history purposes.

Indeed, the *Doyle* court seemed to believe that the New Jersey Legislature had left the construction of the words of the State's criminal code to the courts. For example, the *Doyle* court explained:  "Criminal codes in New Jersey have not utilized the felony-

10

misdemeanor nomenclature or classification of the English common law . . . [A]nd the absence of a specific 'felony' category in our crimes act create a necessity for a decision with respect to the kind of offense which will justify a police officer in arresting without a warrant." 42 N.J. at 348.

As stated earlier, we note that the dispute in *Doyle* centered on whether a high misdemeanor constituted a common-law felony which would allow a police officer to arrest a person without a warrant. On the other hand, the present dispute centers on whether Rodriguez' New Jersey conviction of assault with intent to rape—charged as a high misdemeanor—should be treated as a felony. This court, however, notes that several courts have adopted the *Doyle* felony test to determine whether a defendant's New Jersey conviction could be counted as a felony for sentencing enhancement purposes under their respective statutes. See *United States v. Brown*, 937 F.2d 68, 70 (2d Cir. 1991); *State v. Gillison*, 766 N.W.2d 649 (Iowa Ct. App. 2009); *State v. Hogan*, 234 N.C. App. 218, 227, 758 S.E.2d 465 (2014). This court adopts the *Doyle* test for the purpose of this issue.

As a result, we conclude that the district court properly classified Rodriguez' conviction for assault with intent to rape as a felony.

*Person Classification Errant*

Nevertheless, the district court's ruling to classify Rodriguez' assault with intent to rape conviction as a person crime was errant.

This court's analysis must first begin by recognizing that Rodriguez' arguments concerning the application of the categorical approach and modified categorical approach outlined in *Descamps* are off the mark. In *Descamps*, the United States Supreme Court held that sentencing courts must use the categorical approach and modified categorical approach when considering facts that go beyond the existence of the defendant's prior

11

conviction that will enhance the defendant's sentence or else violate *Apprendi*. 570 U.S. at 260-64.

Yet, under K.S.A. 21-4711(e), courts first look to the elements of the defendant's prior out-of-state crime and see if that crime is comparable to any Kansas offense. If it is not comparable to any Kansas offense, then the defendant's prior crime must be classified as a nonperson crime for criminal history purposes. Although a present dispute centers on whether courts must apply the rules of *Apprendi* and *Descamps* when the comparable offense under the Kansas criminal code criminalizes only some conduct as person crimes, there is no dispute that the rules of *Apprendi* and *Descamps* are inapplicable (1) when the comparable Kansas offense criminalizes all conduct as either person or nonperson crimes or (2) when the out-of-state conviction has no comparable Kansas offense. See *State v. Fahnert*, 54 Kan. App. 2d 45, Syl. ¶ 3, 396 P.3d 723 (2017); *State v. Buell*, 52 Kan. App. 2d 818, 829, 377 P.3d 1174 (2016), *rev'd on other grounds* 307 Kan. ___, 412 P.3d 1004 (2018). Moreover, because the State's argument is that N.J. Stat. Ann. § 2A:90-2 is comparable to either the Kansas offense of aggravated assault or attempted rape—both disjuncts are always person crimes, and Rodriguez' argument is that there is no comparable Kansas offense—this court need not engage in *Apprendi* and *Descamps* analysis to resolve this issue.

Next, turning our focus to what constitutes a comparable offense, this court has previously explained: "Under K.S.A. 21-4711(e), a comparable offense need not contain elements identical to those of the out-of-state crime, but must be similar in nature and cover a similar type of criminal conduct." *State v. Barajas*, 43 Kan. App. 2d 639, Syl. ¶ 2, 230 P.3d 784 (2010). In *Barajas*, for example, this court found that California's offense of DUI causing bodily injury was not comparable to Kansas' offense of aggravated battery because (1) the crimes had different culpable mental states and (2) the California DUI law had an element the Kansas aggravated battery law did not have, which was "that the defendant drive while legally intoxicated and concurrently neglect to perform a duty

12

required by law." 43 Kan. App. 2d 639, Syl. ¶ 4. Therefore, the *Barajas* court vacated Barajas' sentence, remanding to the district court with orders that Barajas' California DUI be classified as a nonperson crime for criminal history purposes. 43 Kan. App. 2d at 648. The *Barajas* precedent establishes that this court's inquiry must focus on whether N.J. Stat. Ann. § 2A:90-2 punishes the same general conduct as some Kansas offense. See also *State v. Rodriguez*, 305 Kan. 1139, 1154, 390 P.3d 903 (2017) (holding the Colorado crime of misdemeanor third-degree assault was not comparable to Kansas' aggravated battery given that the two crimes had different requisite culpable mental states).

Once again, assault with intent to rape under N.J. Stat. Ann. § 2A:90-2 states: "Any person who commits an assault with intent to kill, or to commit burglary, kidnapping, rape, robbery or sodomy, or to carnally abuse a female under the age of 16, with or without her consent, is guilty of a high misdemeanor . . . ." Indeed, the listed elements of N.J. Stat. Ann. § 2A:90-2 is essentially identical to the title of the offense, which is "assault with intent to kill, commit burglary, kidnapping, rape, robbery, sodomy or carnal abuse." Clearly, Kansas does not have a crime called "assault with intent to kill, commit burglary, kidnapping, rape, robbery, sodomy or carnal abuse." Thus, based upon the name alone, N.J. Stat. Ann. § 2A:90-2 is different from any crime in Kansas.

Nevertheless, the State is correct that Kansas has an offense that criminalizes the commission of an assault when the defendant commits the assault with the intent to commit a felony: aggravated assaults under K.S.A. 21-3410(c). K.S.A. 21-3408 defines assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 21-3410(c) states: "Aggravated assault is an assault, as defined in K.S.A. 21-3408 and amendments thereto, committed: . . . with intent to commit any felony."

Something that makes N.J. Stat. Ann. § 2A:90-2 clearly distinguishable from K.S.A. 21-3410 is that the act of "assault" is not statutorily defined anywhere under the

13

New Jersey criminal code. In *State v. Adamo*, 9 N.J. Super. 7, 9, 74 A.2d 341 (App. Div. 1950), the New Jersey Superior Court cited to *State v. Staw*, 97 N.J.L. 349, 350, 116 A. 425 (1921), for the following definition of assault: "[a]n assault has been defined as 'an attempt or offer with unlawful force or violence to do a corporal hurt or physical injury to another.'" The New Jersey Superior Court again approved of this definition when considering the crime of "assault with intent to commit sodomy" under N.J. Stat. Ann. § 2A: 90-2 in *State v. Still*, 112 N.J. Super. 368, 370, 271 A.2d 444 (App. Div. 1970). The *Still* court further clarified the definition of assault while distinguishing N.J. Stat. Ann. § 2A:90-2 "assault with intent to . . ." crimes from attempt crimes. After recognizing the "classic definitions" of assault, which included a Black's Law Dictionary definition of assault as unlawful force that created a "well-founded fear of imminent peril" in another, the *Still* court concluded that "[a]n assault is an act done *toward the commission of a battery*." (Emphasis added.) 112 N.J. Super. at 370-71. In other words, according to the New Jersey Superior Court, the end goal of an assault must be a battery.

Consequently, despite the fact there is no statutory definition of assault in New Jersey, one exists through caselaw. Indeed, both Rodriguez and the State cite to the court-crafted definition of assault as the correct definition of assault. Nevertheless, it is readily apparent that this New Jersey assault is different than an assault under K.S.A. 21-3410. This is because Kansas' assaults, and therefore, Kansas' aggravated assaults, require that the defendant intentionally place the victim in reasonable apprehension of bodily harm. K.S.A. 21-3408; K.S.A. 21-3410. But, an assault as defined by New Jersey caselaw requires an attempt to hurt or injure the victim, that is, a nearly completed battery. Thus, the key differences between the statutes are as follows: (1) N.J. Stat. Ann. § 2A:90-2 requires the defendant to intend to injure or harm the victim while K.S.A. 21-3410 does not; and (2) N.J. Stat. Ann. § 2A:90-2 does not require intentionally placing another person in reasonable apprehension of immediate bodily harm while K.S.A. 21-3410 does.

14

As a result, Kansas recognizes only tort-type assaults, which does not cover situations in which the victim is unaware of the assault. Thus, Kansas assaults are narrower than the usual criminal definition of assault. See *State v. Warbritton*, 215 Kan. 534, 537, 527 P.2d 1050 (1974). In *Warbritton*, 215 Kan. at 537, our Supreme Court held: "It is evident to us that one of the essential elements of assault under the present statute (21-3408) is an immediate apprehension of bodily harm to his person on the part of the assaultee." In *State v. Deutscher*, 225 Kan. 265, 272, 589 P.2d 620 (1979), while considering the elements of aggravated assault, our Supreme Court held that a defendant's "threat must result in immediate apprehension of bodily harm." In *State v. Duncan*, 3 Kan. App. 2d 271, Syl. ¶ 3, 593 P.2d 427 (1979), this court explained that "[t]here is no assault if the victim is not in immediate apprehension of bodily harm." Furthermore, in *State v. Martinez*, 20 Kan. App. 2d 824, 834, 893 P.2d 267 (1995), this court explained that "[t]he apprehension of bodily harm is a threshold requirement of criminal culpability" for any assault.

We also find Kansas' lengthy history of defining assault in this manner is noteworthy. Our Legislature adopted the tort-type assault in 1969 when it recodified the Kansas criminal code. See L. 1969, ch. 180, § 21-3408, repealing G.S. 1949, 21-436. Yet, our Supreme Court had affirmed assault convictions on the basis that the defendant placed the victim in fear of bodily harm at a much earlier time. See *The State v. Taylor*, 20 Kan. 643, 645 (1878); *State v. Archer*, 8 Kan. App. 737, 741, 54 P. 927 (1898); *The State v. Coyle*, 103 Kan. 750, 750, 175 P. 971 (1918); *State v. Hazen*, 160 Kan. 733, 739-41, 165 P.2d 234 (1946).

Thus, because the "immediate apprehension of bodily harm" element is an essential element of any assault in Kansas, it is readily apparent that Kansas assaults are narrower crimes than assaults under N.J. Stat. Ann. § 2A:90-2. Defendants who have committed assaults under N.J. Stat. Ann. § 2A:90-2 need only intend to injure their victim. Meanwhile, defendants who commit assaults in Kansas must take the extra step of

15

placing their victim in fear of bodily harm. Indeed, our Supreme Court and this court have reversed defendants' aggravated assault convictions where there was no evidence establishing that the defendant's acts placed the victim in immediate apprehension of bodily harm. See *Warbritton*, 215 Kan. at 538; *Duncan*, 3 Kan. App. 2d at 274.

In summary, Kansas assault crimes require that defendants place their victims in immediate apprehension of bodily harm while N.J. Stat. Ann. § 2A:90-2 merely requires that defendants intend to injure their victims. Again, Kansas recognizes only tort-type assaults while New Jersey does not. Thus, Kansas' and New Jersey's assault statutes *do not* criminalize the same core conduct. Kansas assaults penalize a narrower range of conduct. In other words, assaults in Kansas are narrower than assaults under N.J. Stat. Ann. § 2A:90-2. As a result, Kansas' assaults, whether aggravated or simple assaults, are not comparable to N.J. Stat. Ann. § 2A:90-2.

Turning our focus next to the State's argument that N.J. Stat. Ann. § 2A:90-2 may be comparable to the Kansas offense of attempted rape, which the dissent has also adopted, we believe this argument is without merit. The dissent argues the following:

> "[A]ttempt is always contained within assault with intent to commit but not the other way around. Thus, using Rodriguez' crime as the example, if one commits assault with intent to rape, one also commits attempted rape under New Jersey law because one has committed not just the first act short of completing the crime of rape, but the last as well." Slip op. at 28.

In turn, the dissent concludes that "assault with intent to rape as defined by [the] New Jersey statute easily constitutes an overt act required by attempted rape under Kansas law as the elements of assault with intent to rape in New Jersey are narrower than the elements of attempted rape in Kansas." Slip op. at 28.

16

Nevertheless, we believe both past and present Kansas statutes, as well as Kansas Supreme Court caselaw, establish the dissent's analysis is incorrect. In the early to mid-twentieth century there was a Kansas crime called "felonious assault," which penalized the commission of "assault with the intent to rape." Specifically, Kansas' "felonious assault" statute criminalized the commission of "an assault with an intent to commit any robbery, rape, burglary, manslaughter, or other felony." G.S. 1909, 2529; see also G.S. 1949, 21-431; G.S. 1949, 21-434. In addition, during that time, our Supreme Court considered whether the crime of "felonious assault" was actually the same crime as "attempted rape." See, e.g., *In re McClane*, 129 Kan. 739, 284 P. 365 (1930), *overruled on other grounds by State v. Fowler*, 238 Kan. 326, 710 P.2d 1268 (1985); *In re Stahlnaker*, 93 Kan. 622, 144 P. 832 (1914); *State v. Custer*, 85 Kan. 445, 116 P. 507 (1911). Our Supreme Court held that "felonious assault" and "attempted rape" were not the same crime. Our Supreme Court explained that although the crimes had similarities, the two crimes were different because an "attempted rape" merely required the defendant to take some overt act toward the commission of a rape; yet, to be convicted of "*assault* with intent to rape" under the "felonious *assault*" statute, the defendant needed to specifically commit an assault. See *Custer*, 85 Kan. at 446-47. Our Supreme Court also emphasized that assault was an "independent offense" with its own distinct elements. *Stahlnaker*, 93 Kan. at 623-24; *Custer*, 85 Kan. at 446-47.

The lessons from the preceding law are twofold. First, to make the New Jersey statute comparable to Kansas' "attempted rape" statute, the dissent has equated the element of assault in N.J. Stat. Ann. § 2A:90-2 to the element of attempt under K.S.A. 21-3301(a). Yet, this equation fails to recognize the distinction that our Supreme Court considered many years ago—although the overt act that constitutes an attempt may be an assault, an assault is an independent offense with its own distinct elements. When Rodriguez committed his "assault with intent to rape" crime under N.J. Stat. Ann. § 2A:90-2, New Jersey also criminalized attempted rapes. See, e.g., *State v. Stevens*, 136 N.J. Super. 262, 264, 345 A.2d 804 (App. Div. 1975) (where the defendant was charged

17

and convicted of attempted rape). Also, as noted by the dissent, in *Still*, the New Jersey Superior Court explained that an "attempted sodomy" was a distinct and separate offense from an "assault with intent to commit sodomy." 112 N.J. Super at 370-71. Thus, it logically follows that because both New Jersey and our Supreme Court have held that an attempted crime is not the same offense as an assault with the intent to commit a crime offense, we do not find these offenses comparable for person-nonperson sentencing classification purposes.

Second, Kansas' former "felonious assault" statute is very similar to N.J. Stat. Ann. § 2A:90-2. And, in 1969 while recodifying the entire Kansas criminal code, the Legislature repealed the "felonious assault" statute while also enacting the "aggravated assault" statute. L. 1969, ch. 180, § 21-3410; K.S.A. 21-431 (Corrick 1964); K.S.A. 21-3410. Thus, "felonious assault" is clearly the predecessor statute to Kansas' modern-day "aggravated assault" statute. We believe the similarity between N.J. Stat. Ann. § 2A:90-2 and the "felonious assault" statute, as well as the "aggravated assault" statute's replacement of the "felonious assault" statute upon the latter's repeal, establishes that Kansas' "aggravated assault" statute is Kansas' *most comparable* offense.

Indeed, this conclusion is consistent with how our Supreme Court has previously interpreted and applied K.S.A. 21-4711(e). Our Supreme Court has held that "'[t]he court looks to the *most comparable* Kansas offense to determine whether the conviction is classified as a person or nonperson crime.' [Citation omitted.]" (Emphasis added.) *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015); see also *State v. Ohrt*, No. 114,516, 2016 WL 3856321, at *6 (Kan. App. 2016) (unpublished opinion) *rev. denied* 306 Kan. 1327 (2017); *State v. Long*, No. 110,852, 2014 WL 4723750, at * 3 (Kan. App. 2014) (unpublished opinion) (both cases where this court recently used the "most comparable offense" rule). As explained in the preceding paragraphs, an aggravated assault under K.S.A. 21-3410(c) criminalizes the commission of an assault with the "intent to commit

18

any felony." Additionally, very recently in *State v. Wetrich*, 307 Kan. ___, 412 P.3d 984, 991 (2018), our Supreme Court emphasized that our Legislature enacted the "comparable offense" language to ensure that defendants receive "even-handed, predictable, and consistent application of the law across jurisdictional lines."

Clearly, if N.J. Stat. Ann. § 2A:90-2 had any possibility of being comparable to a Kansas offense, it would be an aggravated assault because that crime (1) has the element of assault and (2) has the element of the intent to commit an underlying felony. An attempt under K.S.A. 21-3301(a), on the other hand, is "any overt act toward the preparation of a crime done by a person who intends to commit such crime but fails in the preparation thereof or is prevented or intercepted from executing such crime." Further, a rape under K.S.A. 21-3502(a)(1)(A)-(C) encompasses "[s]exual intercourse with a person who does not consent to the sexual intercourse" when the victim is "overcome by force or fear," is "unconscious or physically powerless," or is " incapable of giving consent . . . ." Therefore, an "attempted rape" in no way involves criminalizing committing a crime with the intent to kill, commit burglary, kidnapping, robbery, sodomy or carnal abuse as N.J. Stat. Ann. § 2A:90-2 does. Moreover, an "attempted rape" in Kansas does not have an element of assault. Consequently, we think a simple comparison of  N.J. Stat. Ann. § 2A:90-2 to Kansas' "aggravated assault" and "attempted rape" statutes establishes that "aggravated assault" is *more comparable* to N.J. Stat. Ann. § 2A:90-2 than "attempted rape." In other words, "attempted rape" is not the *most comparable* Kansas crime to N.J. Stat. Ann. § 2A:90-2.

In summary, given that Rodriguez was convicted of "*assault* with intent to rape" under N.J. Stat. Ann. § 2A:90-2, while engaging in the person-nonperson sentencing classification comparison under K.S.A. 21-4711(e), we must consider the assault element of Rodriguez' prior New Jersey "assault with intent to rape" crime. If we were to hold otherwise, courts could find a defendant's prior out-of-state aggravated-assault-type conviction comparable to an attempted Kansas crime without ever comparing the

19

meaning of an essential element of the defendant's prior out-of-state offense—assault. In the context of this case, it would mean ignoring the fact, as the dissent does, that New Jersey has a broader definition of assault than Kansas, a definition of assault that Kansas has firmly accepted for decades. Moreover, the dissent's position requires a distorted interpretation of what our Supreme Court meant when it held the following: "'The court looks to the *most comparable* Kansas offense to determine whether the conviction is classified as a person or nonperson crime.'" (Emphasis added.) *Vandervort*, 276 Kan. at 179. Finally, the dissent's position is inconsistent with K.S.A. 21-4711(e)'s goal of ensuring even-handed, predictable, and consistent application of the law across jurisdictional lines when sentencing defendants.

Once again, because we find that an assault under N.J. Stat. Ann. § 2A:90-2, which requires "an act done toward the commission of a battery," penalizes broader conduct than Kansas' tort-type assault under K.S.A. 21-3410, we hold that N.J. Stat. Ann. § 2A:90-2 and K.S.A. 21-3410 are not comparable for person-nonperson sentencing classification purposes under K.S.A. 21-4711(e). When no comparable offense exists, then a defendant's prior out-of-state crime must be classified as a nonperson crime. Thus, this court vacates Rodriguez' sentence and remands with directions to classify his assault with intent to rape as a nonperson crime for criminal history purposes.

*Did the State Violate the Terms of its Plea Agreement With Rodriguez?*

Rodriguez' final argument is that the State violated the terms of his plea agreement when it requested that the district court sentence him to the aggravated presumptive sentence at his resentencing. The State responds that it did not violate the terms of the plea agreement because the plea agreement was dependent upon Rodriguez having a criminal history score of A. The State contends that once Rodriguez successfully challenged his 1997 Nevada burglary conviction as constituting a person felony for criminal history purposes, it was no longer bound to the terms of the plea agreement.

20

Alternatively, the State argues that if it breached its plea agreement with Rodriguez, its breach was harmless because Rodriguez did not enter into the plea agreement based upon its promise to jointly recommend the standard presumptive sentence.

Appellate courts exercise unlimited review over questions involving whether the State violated a defendant's plea agreement. *State v. Urista*, 296 Kan. 576, 582-83, 293 P.3d 738 (2013). The State's failure to follow through on a term of a defendant's plea agreement results in a violation of that defendant's due process rights. 296 Kan. at 583. To determine if the State failed to comply with a term of a plea agreement, courts rely on the principles of contract law. 296 Kan. at 583. When the terms of a plea agreement are open to different interpretations, courts must construe the ambiguous terms strictly in favor of the defendant. *State v. Case*, 289 Kan. 457, 462, 213 P.3d 429 (2009). A State's breach of a plea agreement may be deemed harmless only when the State can establish beyond a reasonable doubt that the specific part of the agreement it breached had little, if any, bearing on the defendant's decision to enter into the plea agreement. *Urista*, 296 Kan. at 594-95; *State v. Meyer*, 51 Kan. App. 2d 1066, 1071, 360 P.3d 467 (2015).

Here, there is no written plea agreement. Thus, this court's review is limited to the prosecutor's and Rodriguez' attorney's statements at the plea hearing. Once more, at the plea hearing, the prosecutor stated that under the terms of the plea agreement, the State would be dismissing all but one count of sexual exploitation of a child with prejudice, while also recommending that Rodriguez receive no departures and the standard presumptive sentence in exchange for Rodriguez' *Alford* plea. Regarding Rodriguez' criminal history, the prosecutor stated: "Just no departures, Your Honor. It's contemplated, but again the parties know that we have no control or bearing on that, but he is probably a (A) criminal history and be sentenced in column A at the time of sentencing."

21

The prosecutor's statement recognizing that "the parties kn[e]w that we have no control or bearing on [Rodriguez' criminal history]" establishes that the prosecutor understood that Rodriguez' criminal history was out of his control. This is because district courts are bound to apply a defendant's *correct* criminal history score. See *State v. Boley*, 279 Kan. 989, 992, 113 P.3d 248 (2005) (citing *State v. Haskins*, 262 Kan. 728, 730-32, 942 P.2d 16 [1997]). In any event, by looking at the entirety of the prosecutor's statement, it is clear that the prosecutor was merely clarifying that the parties had agreed that Rodriguez should not be given any departures by emphasizing that the parties had considered what criminal history score Rodriguez would likely have under the KSGA. On top of this, no terms of the plea agreement prevented Rodriguez from appealing the legality of his sentence. Thus, Rodriguez did not violate some other condition of his plea agreement by challenging how his 1997 Nevada burglary conviction was classified for criminal history purposes. See *Boley*, 279 Kan. at 993 (explaining that there was no violation of a plea agreement by defendant who challenged legality of his sentence when that defendant had not waived his ability to challenge the sentence as part of his plea agreement).

Accordingly, based upon the prosecutor's statements, it is readily apparent that Rodriguez having a criminal history score of A was not part of the plea agreement. In turn, despite the district court's finding to the contrary, the State violated the terms of its plea agreement with Rodriguez when it recommended to the district court that it sentence Rodriguez to the aggravated presumptive sentence for his crime of sexual exploitation of a child. Still, the State asserts that this court can find harmless error because "Rodriguez was not induced to enter the plea agreement by the promise to recommend the standard [presumptive] sentence." The State contends that Rodriguez' primary reason for entering the plea agreement was the dismissal of 52 of the 53 counts of sexual exploitation of a child with prejudice.

22

There can be little doubt that the dismissal of the 52 counts of sexual exploitation of a child with prejudice motivated Rodriguez to enter into the plea agreement. Even so, to find the breach harmless, this court must be convinced "beyond a reasonable doubt that the State's promise *had little, if any, influence* on the defendant's decision to enter into the plea agreement." (Emphasis added.) *Urista*, 296 Kan. 576, Syl. ¶ 6.

In *Meyer*, the State violated its plea agreement with Meyer when it recommended to the district court that it sentence Meyer to aggravated presumptive sentences instead of the mitigated presumptive sentences as promised in the plea agreement. Another term of Meyer's plea agreement was that the State would agree to stipulate that Meyer should be sentenced on the KSGA grid for his otherwise off-grid offenses of aggravated criminal sodomy and aggravated indecent liberties with a child. In Meyer's appeal to this court, the State conceded that it breached the plea agreement but argued that the breach was harmless because (1) "the district court sentenced [Meyer] to mitigated (per the plea agreement) and concurrent (per his departure request) sentences," and (2) "the most important part of the plea agreement was the departure to the sentencing grid." 51 Kan. App. 2d at 1071.

The *Meyer* court, however, rejected these arguments because "nothing in the record suggests that Meyer's motivation revolved solely around the departure." 51 Kan. App. 2d at 1071. The *Meyer* court explicitly held that the State's unsupported "speculation" about "Meyer's motivations [for entering the plea agreement were] insufficient to satisfy the high burden placed upon the State in proving the error's harmlessness." 51 Kan. App. 2d at 1071. Therefore, the *Meyer* court agreed to Meyer's request of specific performance, vacating his sentence and remanding to a different district court judge with directions that the State specifically perform the plea agreement. 51 Kan. App. 2d at 1072.

Plainly, this case and the *Meyer* case are comparable in many ways. To begin with, in both cases the State breached the plea agreement by recommending to the district court that the defendant be sentenced to the aggravated presumptive sentence under the KSGA instead of a lower presumptive sentence. In both cases, the State has argued harmless error by pointing out that as part of the plea agreement, the defendant was promised a significant reduction of prison time, which it believes was the defendant's real reason the defendant entered into the plea agreement.

Nevertheless, just like in *Meyer*, the State's assertion about Rodriguez' motivation for entering into the plea agreement is pure speculation. Here, nothing in the record indicates Rodriguez' motivation for entering his *Alford* plea. It is noteworthy, however, that at the plea hearing, that based upon the parties' belief that Rodriguez had a criminal history score of A, the difference between an aggravated presumptive sentence for sexual exploitation of a child and the standard presumptive sentence for sexual exploitation of a child was six months. The State argues that this is not a significant difference in prison terms. The State does this by pointing out that if it had not entered into a plea agreement with Rodriguez and had convicted him of all 53 counts of sexual exploitation of a child, Rodriguez could have received up to a 544-month prison sentence with an upward durational departure.

Nevertheless, the fact is that the State did enter into a plea agreement with Rodriguez. The State undoubtedly had its reasons for entering into a plea agreement where it dismissed 52 of the 53 remaining counts of sexual exploitation of a child. More importantly, however, 544 months is a lengthy sentence that is not unlike the two off-grid sentences that Meyer was facing but for his plea agreement with the State. Yet again, in that case, the *Meyer* court rejected the State's argument that the real reason Meyer entered into the plea agreement was the term concerning the departure to the KSGA grid because nothing in the record supported that this was the reason that Meyer entered into the plea agreement.

24

Additionally, in making its arguments, the State has wholly neglected to address the fact that the district court actually imposed the aggravated presumptive sentence on Rodriguez for his crime. Thus, there is a substantial likelihood that the State's breach influenced the district court's sentencing decision. This fact makes the State's breach in this case worse than the breach in *Meyer*, where the district court ultimately imposed the agreed-to mitigated presumptive sentences on Meyer despite the State's breach.

In summary, the State breached its plea agreement with Rodriguez when it recommended that the district court impose the aggravated presumptive sentence. Rodriguez having a criminal history score of A was not a term of the plea agreement. Moreover, the State's breach of the plea agreement was not harmless. "Resentencing before a different judge is the typical remedy for the State's breach of a plea agreement." *State v. Peterson*, 296 Kan. 563, 574, 293 P.3d 730 (2013). Given the sentencing judge's failure to find the State in breach of the plea agreement as well as his decision to impose the aggravated presumptive sentence at the State's request, we believe this is the appropriate remedy. Accordingly, this court vacates Rodriguez' sentence and remands for a new sentencing hearing before a different district court judge where the State is ordered to specifically perform the plea agreement.

Conviction affirmed, sentence vacated, and remanded with directions.

\* \* \*

POWELL, J., concurring and dissenting:  I concur with the majority's determination that this case must be remanded for resentencing because I agree with its conclusion that the State violated the terms of the plea agreement when it recommended the aggravated presumptive sentence in the appropriate sentencing grid box instead of the standard presumptive sentence. I also agree that we may consider the merits of Rodriguez' illegal

25

sentence claim because a claim of an illegal sentence may be raised at any time. However, I must dissent from the majority's holding that Rodriguez' 1977 New Jersey conviction for assault with intent to rape under N.J. Stat. Ann. 2A:90-2 has no comparable Kansas crime and must therefore be classified as a nonperson felony.

While I have no quarrel with the majority's determination that Rodriguez' 1977 New Jersey conviction is properly classified as a felony for the reasons it states, I disagree that there is no comparable Kansas crime. For reasons I hope to explain below, I agree with the State's assertion that the New Jersey crime of assault with intent to rape is comparable to the Kansas crime of attempted rape.

Whether Rodriguez' 1977 New Jersey conviction for assault with intent to rape should be classified as a person or nonperson crime for criminal history purposes requires a comparison of this crime with "comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed." K.S.A. 2017 Supp. 21-6811(e)(3) (formerly K.S.A. 21-4711[e]). In evaluating what is a comparable offense, the essential question is whether the offenses are similar in nature and cover similar conduct. *State v. Barajas*, 43 Kan. App. 2d 639, 643, 230 P.3d 784 (2010). Very recently, our Supreme Court declared that for an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. *State v. Wetrich*, 307 Kan. __, Syl. ¶ 3, 412 P.3d 984 (2018). In other words, the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced. *Wetrich*, 307 Kan. __, Syl. ¶ 3.

Examining first the rape element of the two statutes, it appears that New Jersey's definition of rape which existed at the time Rodriguez committed his New Jersey offense is virtually identical to the Kansas definition. In *State v. Terry*, 89 N.J. Super. 445, 451, 215 A.2d 374 (App. Div. 1965), the New Jersey appellate court defined the elements of

26

rape as "carnal knowledge, force and lack of consent." In Kansas, rape is, among other things, engaging in sexual intercourse with a victim without the victim's consent, when the victim is overcome by force or fear, or when the victim is unconscious or physically powerless. K.S.A. 2017 Supp. 21-5503(a)(1)(A)-(B) (formerly K.S.A. 21-3502). The elements of New Jersey rape are the same or narrower as the Kansas elements for rape.

The more difficult comparison is between New Jersey's assault with intent to commit a crime versus Kansas' attempt to commit a crime.

In Kansas, the elements of attempted rape require the defendant to perform an overt act toward the commission of rape, to do so with the intent to commit rape, and to fail to complete the commission of rape. K.S.A. 2017 Supp. 21-5301 (formerly K.S.A. 21-3301). Also, "an overt act requires an act beyond mere preparation, which can be considered a first or subsequent step in a direct movement towards completing the crime." *State v. Martinez*, 290 Kan. 992, 1003, 236 P.3d 481 (2010). An "overt act" has been broadly interpreted in the context of attempted rape. *State v. Zimmerman*, 251 Kan. 54, 60, 833 P.2d 925 (1992).

As the majority correctly states, "the act of 'assault' is not statutorily defined anywhere under the New Jersey criminal code." Slip op. at 14. Generally speaking, New Jersey law defines an assault as "'an attempt or offer with unlawful force or violence to do a corporal hurt or physical injury to another' or 'force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with an apparent present ability to execute the attempt if not prevented.'" *State v. Still*, 112 N.J. Super. 368, 370, 271 A.2d 444 (App. Div. 1970). In the context of rape, New Jersey provides that "assault with intent to [rape] entails conduct which has surpassed the preparatory or attempt phase of criminality. As such, it must be characterized by assaultive behavior intended presently and contemporaneously to [rape]." *State v. Mergott*, 140 N.J. Super. 126, 132, 355 A.2d 674 (App. Div. 1976).

27

However, the *Still* court—also cited by the majority—while holding that an attempt to commit a crime and an assault with intent to commit a crime were not exact equivalents because assault was "much more literal in its requirement of 'dangerous proximity to success'" than attempt, stated that "an assault with intent to commit a certain crime generally includes an attempt to commit that crime," but not vice versa. 112 N.J. Super at 371. In the context of assault and battery, the court explained that an assault immediately precedes the battery, with "[t]he next movement . . . complet[ing] the battery," while "'the overt act done in the attempt to commit an offense need not be the last proximate act prior to the consummation'" of the crime. 112 N.J. Super at 371 (quoting *State v. Hetzel*, 159 Ohio St. 350, 352-53, 112 N.E.2d 369 (1953). In other words, attempt is always contained within assault with intent to commit but not the other way around. Thus, using Rodriguez' crime as the example, if one commits assault with intent to rape, one also commits attempted rape under New Jersey law because one has committed not just the first act short of completing the crime of rape, but the last as well.

Therefore, I conclude that assault with intent to rape as defined by New Jersey statute easily constitutes an overt act required by attempted rape under Kansas law as the elements of assault with intent to rape in New Jersey are narrower than the elements of attempted rape in Kansas. Accordingly, the crimes are comparable under K.S.A. 21-4711(e). As attempted rape in Kansas is a person crime, K.S.A. 21-3502(c), I would find that Rodriguez' 1977 New Jersey conviction for assault with intent to rape must be classified as a person crime.