NOT DESIGNATED FOR PUBLICATION

No. 128,996

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

STEVEN T. WILSON,
*Appellant.*


MEMORANDUM OPINION

Appeal from Franklin District Court; DOUGLAS P. WITTEMAN, judge. Submitted without oral argument. Opinion filed June 18, 2026. Sentence vacated and case remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., MALONE and ATCHESON, JJ.


PER CURIAM: Steven T. Wilson brings this direct appeal from his conviction of possession of methamphetamine after his no contest plea. As part of the plea agreement, the State agreed to either stand silent or not oppose his motion for a dispositional departure. On appeal, he argues that the State's comments at sentencing violated the plea agreement and thus we should vacate his sentence. After careful review, we agree. We thus vacate Wilson's sentence and remand for resentencing.

1

FACTUAL AND PROCEDURAL BACKGROUND

A detailed history of the actions that led to Wilson's charges is unnecessary, but a brief description is helpful for context. In September 2024, Wilson left his bag at a convenience store in Ottawa. Security footage confirmed it was brought in and left by him, and there were several forms of identification belonging to Wilson in the bag. An employee looked in the bag and saw what appeared to be methamphetamine, so the employee called the police. The police searched the bag and found 3.6 grams of methamphetamine and a scale inside the bag. Wilson was arrested a few days later when he was stopped for a traffic violation.

The State charged Wilson with one count of possession of methamphetamine with the intent to distribute, and one count of possession of drug paraphernalia. The case progressed normally and eventually the State offered Wilson a plea deal, and the parties verbally agreed yet did not reduce the plea agreement to writing. Under the plea agreement, Wilson's possession of drug paraphernalia count would be dropped and his charge for possession of methamphetamine with the intent to distribute would be reduced to simple possession of methamphetamine. In exchange for Wilson's plea of no contest to this count, the parties agreed they were free to argue for an appropriate duration within the applicable sentencing grid box, and the State would "stand silent" on or not oppose Wilson's request for a dispositional departure to probation. As agreed, Wilson pleaded no contest to the new charge of possession of methamphetamine.

Wilson moved for a dispositional departure, which incorporated a substance abuse evaluation. During that evaluation, Wilson reported having diagnoses of bipolar disorder, borderline personality disorder, and manic depression. Wilson also disclosed during the evaluation that he had once locked his romantic partner in a garage and poured gasoline around the garage, but he did not light the gasoline on fire. He also admitted to participating in human trafficking. Wilson further explained that he had previously had

thoughts of torturing or murdering another person but did not say that it was a specific person, and he stated that he had not experienced those thoughts in the last six months. This evaluation recommended intermediate residential treatment.

At sentencing, Wilson asked the district court to grant him 12 months' probation with an underlying 40-month prison sentence. Wilson's counsel argued that the district court should follow the recommendation of the substance abuse evaluation and said that the necessary treatment could begin about two months after sentencing when a spot opened.

The prosecutor then made this statement that Wilson alleges breached their plea agreement:

"Judge, pursuant to the plea agreement, the parties had agreed upon a 40-month sentence, but then ultimately, the State was to not take a position on [Wilson's] motion for departure—not oppose it nor support it—and so I will not.

"I will—it's a little unusual. I got the evaluation today and I was reading it and I was pretty disturbed by some of the things the defendant stated in his alcohol and drug evaluation. There was some, kind of, disturbing things in there that I hope the Court had a chance to review that when making its decision, but the State is not opposing the departure nor are we supporting the departure.

"If granted, Judge, we'd ask that the Court impose a 12-month community corrections supervision, that he follow those recs of that alcohol and drug evaluation, and do the inpatient. We'd ask that that be a requirement.

"He does have 189 days jail credit as of today.

"We would ask that he pay the $400 KBI fee and any other—any attorney fees that the Court determines he has the ability to pay.

"And if the Court, obviously, does not grant the motion, then we'd ask that he serve the 40 months in prison and maybe seek some—both mental health and drug treatment as a recommendation by the Court to KDOC while there."

No objection followed. Wilson's attorney responded that Wilson's comments in the evaluation were part of the reason it was hard to find him a residential treatment spot sooner—Wilson was best suited for "a male-only facility that may have some mental health services as well, so that was the challenge." The district court then took a momentary break to read the two-page evaluation.

Wilson then personally addressed the district court. He explained that he knew how his evaluation went and that he was aware he had mental health issues. He told the district court that he wanted to pursue mental health counseling and drug treatment and stated that he personally proposed drug treatment to his attorney before the evaluation and plea agreement.

Ultimately, the district court denied Wilson's request for a dispositional departure. The district court judge concluded that, given Wilson's "significant criminal history"—an A—it found no substantial and compelling reasons to depart. It concluded that Wilson's case was not just a simple drug case and sentenced Wilson to 40 months' imprisonment.

Wilson timely appeals.

I.      DID THE STATE VIOLATE THE TERMS OF THE PLEA AGREEMENT?

On appeal, Wilson argues that the State violated the plea agreement by failing to stand silent on or not oppose his request for probation, which violated his due process rights. The State counters that its comments did not breach the plea agreement, but that even if they did, the breached promise had little or no influence on Wilson's decision to enter the plea agreement, so any breach was harmless.

*Preservation*

We first address the State's claim that Wilson failed to preserve this claim because he did not object during sentencing to the comments that he now challenges.

Generally, a theory not raised before the district court—even one involving constitutional rights, as Wilson raises here—cannot be raised for the first time on appeal. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). We recognize, however, several exceptions to this general rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Kansas Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Wilson argues that the first two exceptions apply. He contends that we have all of the necessary facts to resolve this issue on the merits because the plea agreement was summarized by both Wilson's trial counsel and the State on the record, so the only question presented is one of law. He also argues that the alleged violation of his fundamental due process rights requires review to serve the ends of justice.

Our court has held that a claim that the State breached a plea agreement implicates due process and may be addressed for the first time on appeal without an objection in district court to prevent the denial of fundamental rights. See, e.g., *State v. Bell*, 65 Kan. App. 2d 160, 170-71, 561 P.3d 562 (2024); *State v. Meyer*, 51 Kan. App. 2d 1066, 1070, 360 P.3d 467 (2015); *State v. McDonald*, 29 Kan. App. 2d 6, 9, 26 P.3d 69 (2001); *State v. Groshong*, No. 128,238, 2026 WL 787440, at *2 (Kan. App. 2026) (unpublished

5

opinion). Consistent with these rulings, we will address Wilson's claim for the first time on appeal.

*What was the parties' oral agreement?*

We do not have the benefit of a written agreement here. In his departure motion, Wilson stated that the "plea agreement calls for the parties to be open to argue the duration of the sentence, and for the State to stand silent on [Wilson's] request for probation." But at sentencing, the State stated that under the plea agreement, "the State was to not take a position on the defendant's motion for departure—not oppose it nor support it." On appeal, the parties maintain these conflicting positions.

Standing silent is not the same as not taking a position—these are two different promises.

> "A review of precedent in Kansas and other jurisdictions reveals three typical plea agreement promises prosecutors make that govern their conduct at sentencing: (1) a promise to recommend a mutually agreed upon sentence; (2) a promise to take no position on a portion or specific aspect of the sentence, *e.g.*, whether consecutive or concurrent sentences should be imposed; and (3) a promise to remain silent at sentencing." *State v. Peterson*, 296 Kan. 563, 569, 293 P.3d 730 (2013).

But neither party places any emphasis on appeal on the distinction between these promises, so we do not either. See 296 Kan. at 569.

To safeguard due process, we construe any ambiguities in a plea agreement against the State, who is the typical drafter of the agreement. See *Bell*, 65 Kan. App. 2d at 172-73. When a plea agreement is reasonably susceptible to different interpretations, it is ambiguous. *State v. Case*, 289 Kan. 457, 462, 213 P.3d 429 (2009) (citing *State v. Wills*, 244 Kan. 62, Syl. ¶ 2, 765 P.2d 1114 [1988]). But we cannot find the plea agreement here

to be ambiguous because we have no language to examine to determine whether the relevant language can reasonably mean two different things. Instead, we lack any language to examine and are relying on the parties' differing recollections or interpretations of what their unwritten agreement was. We thus consider the parties' plea agreement to be that the State agreed to stand silent or not to take a position on probation.

II.   DID THE PROSECUTOR'S STATEMENTS BREACH THE PLEA AGREEMENT?

Whether the State breached the plea agreement presents a question of law over which we exercise unlimited review. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

Plea agreements are contracts which bind both sides. *State v. Frazier*, 311 Kan. 378, 382, 461 P.3d 43 (2020). When the State makes concessions in exchange for a plea, it must make good on those concessions or the plea will be invalid. *Burden v. State*, 225 Kan. 549, 553, 592 P.2d 451 (1979). Put another way, "[i]f the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing. [Citations omitted.]" *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013); *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021).

Wilson argues that these comments violated the State's agreement to stay silent or not take a position on his request for probation:

> "I got the evaluation today and I was reading it and I was pretty disturbed by some of the things the defendant stated in his alcohol and drug evaluation. There was some, kind of, disturbing things in there that I hope the Court had a chance to review that when making its decision."

*Peterson* recognized the "'fine line'" that the State must walk in an effort to "'balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement.'" 296 Kan. at 570 (citing *State v. Williams*, 249 Wis. 2d 492, 518-19, 637 N.W.2d 733 [2002]). "Several factors are relevant for determining whether a prosecutor's additional comments at sentencing undermine his or her sentencing recommendation, thereby violating the plea agreement." *Urista*, 296 Kan. at 585.

We first consider how restrictive the terms of the plea agreement are in preventing the prosecutor from making the comments at issue. *Urista*, 296 Kan. at 585; see *State v. Crawford*, 246 Kan. 231, 237, 787 P.2d 1180 (1990) (finding the prosecutor's statements did not violate the plea agreement because the State specifically reserved its right to comment on the statutory factors and the State made the sentencing recommendations that it promised). Here, regardless of whether the State agreed to stand silent or it agreed not to take a position on probation, the State negotiated away its right to speak freely on matters relevant to probation at the sentencing hearing.

Secondly, "prior cases indicate that comments will likely not be construed as undermining the recommended sentence if they are made in response to defense counsel's attempt at sentencing to portray the defendant in a favorable light." *Urista*, 296 Kan. at 588. But the State does not contend this happened here, unlike in *State v. Antrim*, 294 Kan. 632, 635-36, 279 P.3d 110 (2012), and *Woodward*, 288 Kan. at 302-03.

Third, "the level of discretion the district court has to impose the recommended sentence is a factor to consider when deciding whether a prosecutor effectively argued against the recommended sentence at sentencing." *Urista*, 296 Kan. at 590. When a district court has limited discretion to impose the recommended sentence then the possibility increases that improper comments by the prosecutor at sentencing will be construed as effectively undermining the recommended sentence:

8

"In *State v. Antrim*, 294 Kan. 632, 279 P.3d 110 (2012), the defendant relied on *Foster* to argue that the prosecutor's statements at sentencing effectively undermined the recommended sentence. This court, however, found that *Foster* was distinguishable because the district court in that case could not impose the sentence recommended in the plea agreement without making an additional factual finding. In contrast, the district court in *Antrim* could have imposed the parties' recommended sentence (concurrent sentences) based solely upon their recommendations at sentencing. By making this distinction between the two cases, we suggested in *Antrim* that if a district court has limited discretion to impose the recommended sentence (*e.g.*, it must make specific factual findings before it can impose the recommended sentence), then the possibility increases that improper comments by the prosecutor at sentencing will be construed as effectively undermining the recommended sentence. See *Antrim*, 294 Kan. at 635." *Urista*, 296 Kan. at 592.

Here, because the sentence was presumptive prison, the district court could not impose the recommended departure to probation without stating on the record substantial and compelling reasons for departing. See K.S.A. 21-6815(a). The district court thus had limited discretion to impose the recommended departure sentence of probation. Under *Urista*, and contrary to the State's claim, this increases the possibility that improper comments by the prosecutor undermined the recommended departure sentence. See 296 Kan. at 592.

Fourth, we consider whether the prosecutor was trying to correct factual misrepresentations. "Absent factual misstatements, a prosecutor who has agreed to remain silent at sentencing is not free to emphasize information already in the court's possession." *Peterson*, 296 Kan. at 571-72. Yet "a promise to remain silent at sentencing has limits. It does not require a prosecutor to stand silent in the face of factual misstatements or to withhold relevant information from the court." 296 Kan. at 571.

We agree with the State that we must view its comments in context. Here, the State stated:

9

"Judge, pursuant to the plea agreement, the parties had agreed upon a 40-month sentence, but then ultimately, the State was to not take a position on [Wilson's] motion for departure—not oppose it nor support it—and so I will not.

"I will—it's a little unusual. I got the evaluation today and I was reading it and I was pretty disturbed by some of the things the defendant stated in his alcohol and drug evaluation. There was some, kind of, disturbing things in there that I hope the Court had a chance to review that when making its decision, but the State is not opposing the departure nor are we supporting the departure."

Still, the record reveals no factual statements that the State was correcting or any relevant information that had been withheld from the district court that the State was bringing to the court's attention. Wilson's motion for a dispositional departure incorporated his drug evaluation, so the district court already had the total picture, disturbing or not. Because Wilson had provided his evaluation to the court, the State had no need to correct any factual inaccuracies or to draw the court's attention to anything in the evaluation. The comments thus appear to have been made only to negatively influence the district court's sentencing decision. See *Peterson*, 296 Kan. at 571-72 ("'Because the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to influence the district court.'") (quoting *United States v. Mondragon*, 228 F.3d 978, 980 [9th Cir. 2000]).

Had Wilson failed to disclose his evaluation to the district court, our analysis would likely be different. See *Peterson*, 296 Kan. at 571 ("'[E]ven where the [S]tate has agreed to stand silent or make no recommendation, it may nonetheless correct factual misstatements and provide the court with *relevant information that is not in the court's possession*.' [Emphasis added.]") (quoting *Sullivan v. State*, 115 Nev. 383, 388 n.4, 990 P.2d 1258 [1999]).

10

We recognize that the State's problematic statements were sandwiched between its opening and closing caveats that it did not oppose Wilson's motion for a dispositional departure. Yet when the State's comments undermine the spirit of the agreement and "effectively undermine[] the sentencing recommendation," then the State is not acting in good faith and violates the terms of the plea agreement even if the State correctly recites the terms of the agreement. *Urista*, 296 Kan. at 594. "[E]ditorializing" on facts may be improper when the State agrees in a plea agreement to take no position on a portion of a defendant's sentence because it "could be considered as urging" the district court to take a position contrary to a negotiated agreement. See *State v. Johnson*, 258 Kan. 100, 107, 899 P.2d 484 (1995). Such is the case here. Under the facts and our precedent, we must conclude that the State's comments violated the spirit of the plea agreement.

*The State's error was not harmless.*

Having found that the State breached the plea agreement, we reach the State's contention that any breach is harmless error. A breach of the plea agreement is harmless error "if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." *Urista*, 296 Kan. at 594-95. "Because breach of a plea agreement by the State denies the defendant due process, the harmless error standard for constitutional error applies, and the breach can be harmless only if this court can conclude beyond a reasonable doubt that there is little, if any, likelihood that it could have changed the result." *State v. McDaniel*, 20 Kan. App. 2d 883, 888, 893 P.2d 290 (1995). The harmless error rule applies even when, as here, the defendant raises the breach of plea agreement issue for the first time on appeal. See *McDonald*, 29 Kan. App. 2d at 9-11.

In determining harmless error in this context, we focus on the consideration that the State offered in exchange for Wilson's agreement to enter a no contest plea. See *Urista*, 296 Kan. at 595. The State charged Wilson with one count of possession of

11

methamphetamine with the intent to distribute, and one count of possession of drug paraphernalia. It later dropped Wilson's possession of drug paraphernalia count and reduced his charge for possession of methamphetamine with the intent to distribute to simple possession of methamphetamine, a level 5 felony. The presumptive disposition for this offense was prison. Yet in exchange for Wilson's plea of no contest to this count, the parties agreed they were free to argue for an appropriate duration within the applicable sentencing grid box, and the State agreed to "stand silent" on or not oppose Wilson's request for a dispositional departure to probation.

Thus, unlike in *Urista*, the State's promise to stand silent or not argue against Wilson's request for probation was not the only consideration that the State offered in exchange for Wilson's agreement to enter his no contest plea. In *Urista*,

> "[t]he *only* consideration that the State offered in exchange for Urista's agreement to enter no contest pleas to 15 crimes (including three counts of aggravated robbery) was its promise to recommend concurrent sentences, resulting in a controlling term of 102 months' imprisonment. Needless to say, the State's promise to recommend concurrent sentences played a significant role in Urista's decision to enter into the plea agreement. Because this central promise of the plea agreement was breached by the prosecutor's comments at sentencing—and Urista raised a timely objection at sentencing regarding the comments—we find that the breach cannot be declared harmless." (Emphasis added.) 296 Kan. at 595.

*Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), offers some guidance. It counsels that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. Under the constitutional harmless error standard, the burden of demonstrating harmlessness is on the party benefiting from the error. *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011). The State fails to show that Wilson's plea did not rest in any significant degree on

12

the State's agreement not to influence the district court's decision on probation. Thus we cannot say beyond a reasonable doubt that the State's promise to stand silent or to take no position on probation had little, if any, influence on the defendant's decision to enter into the plea agreement.

*Disposition*

Wilson seeks specific performance of the plea agreement at a resentencing hearing. Having concluded that the State breached the plea agreement, we vacate Wilson's sentence and remand for resentencing in front of a different district court judge, where the State will have the opportunity to fulfill its obligations under the plea agreement. See *Peterson*, 296 Kan. at 574 (When a defendant does not wish to withdraw his violated plea, "[r]esentencing before a different judge is the typical remedy for the State's breach of a plea agreement.").

We vacate Wilson's sentence and remand this case to the district court for further proceedings consistent with this opinion.

Sentence vacated and case remanded with directions.